## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

WILLIENARD BANKS,  RENEE A. BAUGH,
AARON P. JACKSON and OLIVIA M. JACKSON

Plaintiffs

**Case No**

v.

THE CHARTERED TOWNSHIP OF BLOOMFIELD,
BOARD OF COUNTY ROAD COMMISSIONERS OF THE
COUNTY OF OAKLAND, OLIVIA OLSZTRY-BUDRY, P.E.,
individually, DENNIS KOLAR, P.E., individually, RICK SAPORSKY, P.E.,
individually, GARY PIOTROWICZ, P.E., P.T.O.E., individually and
DANI WALSH, individually.

Defendants

_____/


## PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF


Renette Jackson  P69002
26677 West 12 Mile Road
Southfield, Michigan 48034
248-910-5415-Direct Cell
AJATLAW@GMAIL.COM

# TABLE OF CONTENT

TABLE OF CONTENTS………..…………….…………….……………………………..ii

PRELIMINARY STATEMENT...………….…………….……………………………...1

JURISDICTION………….…..………………………………………………..8

VENUE……………………………………………………………………………9

PARTIES……………………………………………….………………………9

FACTUAL AND LEGAL FRAMEWORK…………..…………….………………………13

    A.  PLAINTIFFS' COGNIZABLE PROPERTY INTRESTS…………..………13

    B.  DEFENDANTS' UNCONSTITUTIONAL STORM WATER

       ASSET MANAGEMENT POLICY…………………….………………………..31

    C.  THE CHESTNUT RUN SOUTH PAVING PROJECT-

       UNCONSTITUTIONAL AS APPLIED TO PLAINTIFFS…………..………38

    D.  LOCAL GOVERNMENTAL OFFICIAL ARE NOT

       ENTITLED TO QUALIFIED IMMUNITY…………...………………………...49

    E.  PLAINTIFFS ARE  ENTITLED TO PUNITIVE  DAMAGES………...………..50

    F.  DECLARATORY RELIEF ALLEGATIONS…………………………..…… ..52

    G.  INJUNCTIVE RELIEF ALLEGATIONS………………………..…….……...52

CAUSES OF ACTION………………………………...…….……………………..53

PRAYER FOR RELIEF…………………………………………………………71

JURY TRIAL DEMAND………..……………….………………………………..72

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

WILLIENARD BANKS,  RENEE A. BAUGH and
AARON P. JACKSON and OLIVIA M. JACKSON

Plaintiffs

**Case No**

v.

THE CHARTERED TOWNSHIP OF BLOOMFIELD,
BOARD OF COUNTY ROAD COMMISSIONERS OF THE
COUNTY OF OAKLAND, OLIVIA OLSZTRY-BUDRY, P.E.,
individually, DENNIS KOLAR, P.E., individually, RICK SAPORSKY, P.E.,
individually, GARY PIOTROWICZ, P.E., P.T.O.E., individually and
DANI WALSH, individually.

Defendants

_____/

## PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF

"The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."
*Armstrong v. United States,* 364 U.S. 40, 49 (1960)

Plaintiff Willienard Banks, Plaintiff Renee A. Baugh, Plaintiff Aaron P. Jackson, and Plaintiff Olivia M. Jackson (collectively, "Plaintiffs")  by their undersigned attorney, sue the above referenced Defendants. Plaintiffs' Complaint alleges the following against the above-referenced Defendants:

## PRELIMINARY STATEMENT

1.    "[I]t is a fundamental precept of this Nation that public officials should exercise the highest degree of care in discharging their duties when the constitutional rights of citizens are at

stake." *Krause v. Rhodes*, 471 F.2d 430, 458 (6th Cir. 1972). "Ordinarily, we presume that public officials have properly discharged their official duties." *Bracy v. Gramley,* 520 U.S. 899, 909 (1997).

2.   A reasonably competent public official is presumed to know the law governing his or her conduct. *Harlow v. Fitzgeral*d, 457 U.S. 800, 819 (1982).

3.   These presumptions regarding the public officials involved in this Complaint will be soundly rebutted by the allegations in this Complaint.

4.   Protecting constitutional rights from governmental intrusion are not self-enforcing. Some measure of responsibility to secures and protects private property rights rests with the Plaintiffs as beneficiaries of these constitutional rights

5.   In this lawsuit brought pursuant to *42 U.S.C. § 1983*, against the Defendants, Plaintiffs' Complaint seeks vindication for deprivation of private property rights under the Takings, Due Process, Equal Protection Clauses of the United States Constitution, Michigan's 1963 Constitution, Article 10, § 2 and related claims, challenging Defendants 'acts, orders, policies, practices, customs, and procedures, which deprived Plaintiffs in the Chartered Township of Bloomfield ( "Defendant Bloomfield Township") of their private property interests.

6.   At all relevant times, the acts, orders, policies, practices, customs, and procedures of the Defendants are the cause of, and the moving force behind, Plaintiffs' private property constitutional privations by "state actors".

7.   As a direct result of the Defendants' actions alleged herein, Plaintiffs are entitled to recover declaratory, injunctive, compensatory, and punitive relief, as the Court deems just and proper.

8.   All conditions precedent to Plaintiffs' causes of action for relief have been performed and/or occurred.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

9.   Plaintiff Willienard Banks attempted to convince  Defendant Bloomfield Township and the Board of County Road Commissioners of the County of Oakland ("Defendant Board of Road Commissioners") to maintain and repair a public storm water drain system that started, in the spring of 2021, to damage, overflow and backup into the Plaintiffs' land and present public storm water runoff problems that are intermittent, but inevitably recurring flooding and storm water runoff due to authorized state actors.  See *Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081, 1094 (6th Cir. 1978).

10.  Plaintiff  Willienard Banks attempted in a letter dated, September 28, 2021 to convince Defendant Bloomfield Township to maintain and repair a drain easement and drainage facility to stop the damage the surcharging storm water runoff and flooding.  **[See Exhibit 1 and Exhibit 2]**

11.  Plaintiff Willienard Banks attempted in a letter dated, September 28, 2021 to convince Defendant Bloomfield Township to maintain and repair a drain easement and drainage facility to stop the damage the surcharging storm water runoff and flooding was causing.  **[See Exhibit 3 and Exhibit 4]**

12.  Plaintiff Willienard Banks sought explanations from Defendants' attorneys in hope of better understanding the legal foundations, by which Defendant Bloomfield Township and Defendant Board of Road Commissioners justified appropriating private property for public use without just compensation because legal ethic provide that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person." *MRPC 4.1.*

13.  However, the legal opinions of Bloomfield Township attorney, Mark S. Roberts of

Secret Wardle and the Board's General Counsel, Jennifer J. Henderson, **[See Exhibit 5   and Exhibit 6   ]** stand as almost cartoonish admissions against interest  for the taking of private property for public use without just compensation by acknowledging that their clients are encroaching upon private property and/or private property interest  for their own use without paying just compensation.

14.   The legal opinions of Defendant Bloomfield Township and Defendant Board of Road Commissioners admit that these municipalities do not have jurisdiction or a legal right to discharge storm water runoff from the public roadways into Plaintiffs' lands.

15.   The legal opinions of Defendant Bloomfield Township and Defendant Board of Road Commissioners provided no legal rationale for Defendant Bloomfield Township and Defendant Board of Road Commissioners operating policy and custom of imposing flooding and storm water runoff  on private lands without the benefit of a public flowage easement or other legal rights, without the payment of just compensation.

16.   Mark S. Roberts  legal opinion on behalf of Defendant Bloomfield Township, dated November 15, 2021, states in part: "Private property cannot be forced on a municipality without its consent"  and concluded with "[t]he Township, pursuant to *MCL §691.1419(4),* advised you of other governmental entities that may be responsible. The response was not intended to state definitively who is responsible, but only to advise you that the Township is not the holder of the "20 DRAIN EASEMENT" shown on the plat.   **[See Exhibit 5 ].**

17.   Bloomfield Township attorney, Mark S. Roberts legal opinion provided no rationale for Bloomfield Township's operating concept of imposing flooding on private lands he considered to be private without the benefit of a public flowage easement or other legal rights.

18.   The Defendant Board of Road Commissioners' General Counsel, Jennifer J. Henderson provided that "[t]he drain easement on your subdivision plat is private and therefore RCOC does not have jurisdiction over said easement."  **[See Exhibit 6 ].**

19.   The Defendant Board of Road Commissioners' General Counsel, Jennifer J. Henderson in her legal opinion is in agreement with Bloomfield Township attorney, Mark S. Roberts  that the drain easement is private. She also indicates that "[t]he import of as drain easement being private can not be understated." **[See Exhibit 6 ].**

20.   General Counsel, Jennifer J. Henderson proceeds to understate the significance of the drain easement being private. Like Bloomfield Township attorney, Mark S. Roberts legal opinion, General Counsel, Jennifer J. Henderson's legal opinion provided no rationale for Defendant Board of Road Commissioners' and Bloomfield Township's operating concept of imposing flooding and drainage on private lands they considered to be private without the benefit of a public flowage easements, other legal rights or paying just compensation.

21.   In accordance with the *Michigan Freedom of Information Act, MCL 15.231 et seq* ("FOIA") dated**,** September 14, 2022, Plaintiff Willienard Banks requested in "Request No 2" for the Defendant Bloomfield Township and Defendant Board of Road Commissioners to provide any and all agreements, releases, etc., which authorized the Defendants to discharge public water from Chestnut Run Drive, a public  roadway upon property, which the Defendant Bloomfield Township and Defendant Board of Road Commissioners claims is private property, without such public use being considered an unconstitutional governmental taking. **[See Exhibit  7 ].**

22.   Pursuant to *MCL 15.235(4) (b),* Defendant Board of Road Commissioners   denied the request as no such records exist  authorizing the Defendant Board of Road Commissioners   to discharge public storm water runoff from Chestnut Run Drive, a public  roadway, into the private property.  **[See Exhibit 8 ].**

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

23.  Defendant Board of Road Commissioners   response of no existing record makes it clear that  Defendant Board of Road Commissioners   or their public officals and employee have no legal right or jurisdiction to discharge public water from a public roadway into Plaintiffs' lands without paying just compensation.

24.  Defendant Board of Road Commissioners has a statutory duty to keep the roads under its jurisdiction "in reasonable repair, so that they shall be reasonably safe and convenient for public travel." *MCL § 224.21*.

25.  It is Defendant Bloomfield Township Supervisor Dani Walsh (" Defendant Supervisor Walsh"), under *MCL § 42.10 (c)*, as Township Supervisor, not Bloomfield Township's landowners, who the Michigan Legislature also charge with  the construction, repair and maintenance of the sewers.

26.  To paraphrase the Sixth Circuit in *City of Detroit v. State of Mich*, 803 F.2d 1411, 1420 (6th Cir. 1986) "… [Defendant Board of Road Commissioners has a]…  statutory duty to keep the roads under its jurisdiction "in reasonable repair, so that they shall be reasonably safe and convenient for public travel." Mich. Comp. Laws Ann. § 224.21. One aspect of this duty would presumably include a requirement that….. [Defendant Board of Road Commissioners'] provide adequate and appropriate drainage for roads under its jurisdiction."

27.  Citing *Montgomery v. Carter County*, 226 F.3d 758, 765 (6th Cir. 2000), the Eastern District  in  *Miner v. Ogemaw Road Commission*, 1:21-cv-11192, at *19 (E.D. Mich. Sep. 2, 2022) explained that the discharge of storm water from a public roadway into private property is rationally related to improving the public roadway and is a governmental taking.

28.  Plaintiffs and  other similarly situated landowners,  have a claim for a violation of the Takings Clause as soon as  Defendants appropriate the private property  for roadways under their jurisdiction for  public use without paying for the use. **[See Exhibit 9 ].**

29.    In *Miner v. Ogemaw Cnty. Rd. Comm'n*, 1:21-cv-11192, at *16-17 (E.D. Mich. Sep. 2, 2022), the Eastern District quoting *Knick v. Twp. of Scott,* 139 S.Ct. 2162, 2170 (2019) stated:

*"[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." Knick v. Twp. of Scott,139 S.Ct. 2162,* 2170 *(2019). The Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation."* U.S. Const. amend. V*, cl. 4. "If a local government takes private property without paying for it, [then] that government has violated the Fifth Amendment . . . . [a]nd the property owner may sue the government at that time in federal court for the 'deprivation' of a right 'secured by the Constitution.' Knick, 139 S.Ct. at 2170 (quoting 42 U.S.C. § 1983).*

30.    Defendant Board of Road Commissioners   and  Defendant Bloomfield Township continues to make intrusion into Plaintiffs' lands with discharging storm water runoff, which subtract from the Plaintiffs' full use and enjoyment of their lands and limits their exploitation of their lands.

31.    Defendant Board of Road Commissioners   and  Defendant Bloomfield Township discharge storm water runoff and flood waters into Plaintiffs' private property through a defective public roadway storm water drain system  **[See Exhibit 10 ]**, without paying just compensation under   acts, orders, policies, practices, customs, and procedures,   dubbed Storm Water Management Policies (  singularly be referred to as  "SWAMP"), which  is the moving force behind, the  degradation of the Plaintiffs' constitutional private property interests.

32.    *Inter alia.,* SWAMP seeks to burden Plaintiffs with the maintenance and repair of an improved   roadway  storm  water  drain  system  installed  by   Defendant  Board  of  Road Commissioners  and  Defendant Bloomfield Township, pursuant to a Chestnut Run South Special Assessment District No. 419. ("SAD No. 419")  **[See Exhibit 11]**.

33.     Under SWAMP's requirement that  private land owners  repair and maintain  public roadway storm water drain on private property assesses cost against Plaintiffs' lands greater than

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

their pro rata share of the total benefit to all the parcels of land in the Chestnut Run South

Subdivision ("Subdivision"),  amount to an unconstitutional taking without just compensation.

# JURISDICTION

34.  This action arises under the Constitution and laws of the United States and of the

State of Michigan. This Court has jurisdiction over the subject matter and the parties pursuant to

*42 U.S.C. §1983,* which provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State
or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding for redress."

35.  This Court has federal question jurisdiction under *28 U.S.C. § 1343(a)(1)* to hear cases

arising under the Constitution of the United States to redress the deprivation under color of state

law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4)

to secure equitable or other relief for the protection of civil rights.

36.  Pursuant to *28 U.S.C. §§2201* and *2202,* and *Rule 65, Fed. R. Civ. P.,* the Court has

the authority to issue declaratory judgments and permanent injunctive relief against continued

enforcement and maintenance of Defendants' unconstitutional actions.

37.  This deprivation of constitutional rights is causing the Plaintiffs and  other similarly

situated landowners in Defendant Bloomfield Township to suffer irreparable injury for with there

is no adequate remedy at law.  Unless enjoined by this Court, Plaintiffs and other similarly situated

landowners will continue to suffer irreparable harm from the unconstitutional actions of the

38.  As a direct and legal result of the actions of the above referenced Defendants, Plaintiffs

have incurred and will continue to incur costs, disbursements, and/or expenses, including

reasonable attorney, appraisal, engineering, and/or other expert fees due to the conduct of the

Defendants in amounts that cannot yet be ascertained, but which are recoverable pursuant to *42 U.S.C. §1988*.   Plaintiffs also seek an award of their reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

39.   The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to *28 U.S.C. §1367(a)* because these claims form part of the same case or controversy under Article III of the United States Constitution.  Plaintiffs' state law claims share all common operative facts with their federal claims and the parties are identical. Resolving Plaintiffs federal and state claims in a single action serves the interest of judicial economy, convenience, consistency, and fairness to the parties.

## VENUE

40.   All acts or omissions alleged in this Complaint have occurred, or likely will occur, in the Eastern District of Michigan and therefore venue is properly within this district pursuant to *28 U.S.C. § 1391(b)(2).*

## PARTIES

41.  Plaintiff  Willienard Banks and Plaintiff Renee A. Baugh, his wife  are adult individuals and citizens of Michigan, who resides in the Defendant Bloomfield Township, County of Oakland, Michigan.

42.  Plaintiff  Aaron P. Jackson and Olivia M. Jackson, his wife, are adult individuals and citizens of Michigan, who resides in Defendant Bloomfield Township, County of Oakland, Michigan.

43.  Plaintiffs obtained their private  property reasonably, set forth in this Complaint, expecting that they would have the exclusive right to use and enjoy it consistent with their legal private property rights under federal and Michigan law.

44.   Defendant Bloomfield Township is a municipality in Oakland County, Michigan  and is incorporated under Michigan law, with the capability to sue or be sued. See *MCL § 42.1* . Defendant Bloomfield Township is subject to liability for violation of federal constitutional property rights violations perpetrated under color of law under 42 U.S.C. § 1983  due to a policy or custom which may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005).

45.   Defendant Bloomfield Township is sued in its official capacity for implementing and enforcing  unconstitutional acts, orders, policies, practices, customs, and procedures  complained of in this Complaint under the color of law.

46.    Defendant Supervisor  Walsh")   is an employee of Defendant Bloomfield Township and serves as the Township Supervisor.

47.   At all relevant times, Defendant Supervisor Walsh participated in common plan or design to commit unconstitutional acts or lend aid, cooperation, or encouragement in unconstitutional governmental takings against the Plaintiffs, as set forth in this Complaint.

48.   Defendant Supervisor Walsh is sued in her individual capacity for  implementing and enforcing  the unconstitutional acts, orders, policies, practices, customs, and procedures complained of in this Complaint, under color of law.

49.   Defendant Director Olsztry-Budry P.E. ("Defendant Director Olsztry-Budry")   is an employee of Defendant Bloomfield Township and serves as the Director of Engineering & Environmental Services at Defendant Bloomfield Township. She was  Defendant Bloomfield Township's engineer from May 2007 to May 2017. She started as Director of Engineering &

Environmental Services at Defendant Bloomfield Township in May of 2017.  Defendant Director Olivia Olsztry-Budry, P.E. has a Master's degree in civil engineering from Lawrence Technological University.

50.   At all relevant times, Defendant Director  Olivia Olsztry-Budry,P.E. participated in common plan or design to commit unconstitutional acts or lend aid, cooperation, or encouragement in unconstitutional governmental takings against the Plaintiffs, as set forth in this Complaint.

51. Defendant Director  Olivia Olsztry-Budry,P.E. is sued in her individual capacity for implementing and enforcing the unconstitutional acts, orders, policies, practices, customs, and procedures  complained of in this Complaint, under color of law.

52.   Defendant Board of Road Commissioners is a municipality in Oakland County, Michigan and is incorporated under Michigan law, with the capability to sue or be sued.  See *MCL § 224.9.* Defendant Board of Road Commissioners is subject to liability for violation of federal constitutional property rights violations perpetrated under color of law under 42 U.S.C. § 1983 due to a policy or custom which may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga,* 398 F.3d  at 429.

53.   Defendant Board of Road Commissioners  is sued in its official capacity for implementing and enforcing  unconstitutional acts, orders, policies, practices, customs, and procedures  complained of in this Complaint, under color of law.

54.   Defendant Dennis Kolar, P.E., ("Defendant Managing Director Kolar") is an employee Defendant Board of Road Commissioners  and serves as the Managing Director for Defendant Board of Road Commissioners.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

55. According to the biography on Defendant Board of Road Commissioners's website, Defendant Managing Director Kolar has 40-plus years of experience in the road business, including 35 years with Defendant Board of Road Commissioners.   He was appointed managing director effective January 2, 2012, by the Defendant Board of Road Commissioners. Previously, he served as deputy managing director/county highway engineer since 2005 after having held a variety of other executive-level positions with the agency. Prior to joining Defendant Board of Road Commissioners , Defendant Kolar worked for the Michigan Department of Transportation.  He is a registered professional engineer and a graduate in civil engineering from Lawrence Technological University.

56.   At all relevant times, Defendant Managing Director Dennis Kolar participated in common plan or design to commit unconstitutional acts or lend aid, cooperation, or encouragement in unconstitutional governmental takings against the Plaintiffs, as set forth in this Complaint.

57.   Defendant Managing Director Kolar is sued in his individual capacity for implementing and enforcing unconstitutional acts, orders, policies, practices, customs, and procedures complained of in this Complaint, under color of law.

58. Defendant Rick Saporsky, P.E., ("Defendant Supervisor Saporsky")  is an employee Defendant Board of Road Commissioners  and serves as the Supervisor Subdivision Improvement and Development.

59.  At all relevant times,  Defendant Rick Saporsky participated in common plan or design to commit unconstitutional acts or lend aid, cooperation, or encouragement in unconstitutional governmental takings against the Plaintiffs, as set forth in this Complaint.

60. Defendant Rick Saporsky is sued in his individual capacity for implementing and enforcing unconstitutional acts, orders, policies, practices, customs, and procedures complained of in this Complaint, under color of law.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

61.   Defendant Deputy Managing Director Gary Piotrowicz, P.E., P.T.O.E. ("Defendant Deputy Managing Piotrowicz ")  is an employee Defendant Board of Road Commissioners  and serves as the Deputy Managing Director.

62.   At all relevant times, Defendant  Deputy Managing Piotrowicz participated in common plan or design to commit unconstitutional acts or lend aid, cooperation, or encouragement in unconstitutional governmental takings against the Plaintiffs, as set forth in this Complaint.

63.   Defendant  Deputy Managing Piotrowicz  is sued in his individual capacity for implementing  and enforcing  unconstitutional  acts, orders, policies, practices, customs, and procedures complained of in this Complaint, under color of law.

## FACTUAL AND LEGAL FRAMEWORK

## A. PLAINTIFFS' COGNIZABLE PROPERTY INTRESTS

64.   The Plaintiffs live within the Subdivision in Section 9 of Defendant Bloomfield Township. The Subdivision consist of thirty seven (37) lots. The Subdivision's public roadways, consist of approximately 0.73 miles of asphalt roadways, Chestnut Run Drive, Stoneridge Lane, and Laurelwood Court.  [See Exhibit 11].

65.   Plaintiff Willienard Banks and Plaintiff Renee Baugh, his wife own lot 6, commonly known as 3197 Chestnut Run Drive.  They have resided in the Subdivision since  May  of 2008.

66.   Plaintiff Aaron P. Jackson and Plaintiff Olivia M. Jackson, his wife, own lot 7, commonly known as 3197 Chestnut Run Drive.  They have resided in the Subdivision since January of 2019.

67.   The dispute in this case involves government-induced flooding and storm water

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

runoff from  the Subdivision's public roadways' storm water drain system and the unconstitutional actions of Defendants.

68.    During rain or snow melt events, impervious surfaces such as rooftops, driveways, and roadways, prevent water from being absorbed into the ground. When a rain or snow melt events event occurs, the portion of water not absorbed into the ground becomes what is known as "storm water runoff".

69.    "The purpose of a storm sewer is to carry off …. [storm water runoff]. Each lot in the district is benefitted by being relieved from the dangers and damages which may be occasioned from storm waters, more or less common to the district in which it is situated. Each tract ordinarily augments the aggregate volume of storm waters in a district, in the proportion that its area bears to the entire area of lots in the district." *City of Detroit v. State of Mich*, 803 F.2d 1411, 1420 (6th Cir. 1986).

70.    Under Michigan law, roadway storm water drain systems are "part of a system of connected drains, i.e., an assemblage or combination of drains that forms a complex or unitary whole" where the storm sewer. See  *Linton v. Arenac County Road Commission*, 273 Mich. App. 107, 120 ( 2006).

71.    The **s**torm water runoff is carried away from the roadways in the Subdivision via a system of buried pipes known as storm sewers. Storm water enters the system at inlets and catch basins along the Subdivision's roadway curbs. The storm water flows by gravity and eventually discharges into Orange Lake. The discharge point is called the outfall. Collectively three pipes, swales and ditches are called a storm water drain system. **[See Exhibit 10   ]**

72.  To allow for proper function of the overall storm water drain system, the total system needs to be maintained and repaired including the portion of the storm water drainage system and structures on private property.

73.   A review of Defendant Bloomfield Township's utility maps provided to Plaintiff Willienard Banks by Bloomfield Township's Public Works Manager Fotherby, ("Public Works Manager Fotherby")   indicates that over 80-percent of the Subdivision's public roadways and tributary from yards drain to the 20' drain easement located on Lots 6 and 7, near the homes of Plaintiffs. **[See Exhibit 12   ]. [See also Exhibit 10].**

74.   The Subdivision was recorded with the Oakland County Register of Deeds on January 14, 1985 in Liber 185, pages 30 to 35.   **[Exhibit 13 ].** Lots 6 and 7 are bordered  on the west by Chestnut Run Drive, which runs generally in a north -south direction and on the east by Orange Lake. There is a 20 feet wide drain easement (ten feet on each lot) located in the Subdivision's plat between, lot 6 and lot 7, titled "20 Drain Easement" which generally runs from Chestnut Run Drive to Orange Lake.

75.   The Subdivision's plat designates a drain easement between lot  6 and lot 7, which runs from the public street, Chestnut Run Drive, 470 feet to the water's edge of Orange Lake. The designation of this easement on  the Subdivision's properly recorded plat has all the force and effect of an express grant. See *Wiggins v. City of Burton*, 291 Mich. App. 532, 552 ( 2011).

76.   Plaintiffs' reasonable investment-backed expectations regarding their lands did not include government induced flooding from a storm drain system.  Plaintiffs' reasonable investment-backed expectations is that the storm water run off  would be discharged into Orange Lake, not their immediate back yards.

77.   Presently, the 20' wide drain easement that measures over 470 feet in length, contains 148 feet of storm sewer while the remaining 322+ feet of the easement relies on a wetland area to convey storm water to Orange Lake. Both the storm sewer and the open flow area of the storm water system are defective. **[ See Exhibit10   ].**

78.   The storm sewer does not discharge into Orange Lake; but Plaintiffs' immediate backyards. Neither   Defendant Board of Road Commissioners' nor Defendant Bloomfield Township are authorized to discharge public storm water into private property without just compensation..

79.   The Michigan Legislature did not included a "fault" element in *MCL 691.1417(3)(b)*. The Michigan Legislature require only that a claimant allege the mere existence of a "defect" in the sewage disposal system according to the plain language of *MCL 691.1417(3)(b)*. *Willett v. Waterford Charter Township*, 271 Mich. App. 38, 52 ( 2006).

80.   Plaintiff Willienard Banks and Plaintiff Renee Baugh  never had a problem with water flowing through their backyard until 2021. The first time, Plaintiff Willienard Banks and Plaintiff Renee Baugh had a problem with water flowing over their property near their  home or saw a large pooling of water in Plaintiff Aaron Jackson's backyard was the spring of 2021.  **[Exhibit 2-(2) through (5) ].**

81.   Since the spring of 2021, the Subdivision's storm water drain system has been discharging surface water into their immediate back yard and the back yard of Aaron P. Jackson during even minor rainfall events. The precipitations and weather events do not have to be significant to cause storm water to overflow the 20' drain easement and backup into their immediate backyards.

82.   Surcharging storm water was eroding the backyards. In an attempt to mitigate damages, Plaintiff Willienard Banks has placed sands bags around the outfall to direct the water further into the easement after it leaves the storm sewer outfall.

83.   On occasions there are now large pooling of water in Plaintiff Aaron P. Jackson's and Olivia M. Jackson's backyard. **[ See Exhibit 14  ].** Their children have played in this storm water

runoff before it was recognized that they were playing in storm water runoff from the public roadway.

84.   There are times when it rains that water spouts up from  the ground in Plaintiff Aaron P. Jackson's and Olivia M. Jackson's side front yard, in the area where the drain pipe from Chestnut Run Drive is located. Small sinkholes have also developed in the area of the drain pipe and the ground in the area becomes very soggy.  **[ See Exhibit 15  ].**

85.   It appears that the sinkhole has caused a small portion of the drain easement  property to collapse.   Plaintiffs want Defendants to stop  any further  damage to their  land. The improvements to the Subdivision's  roadway drainage system has alter the shape, configuration, and flow of the storm water runoff from the Subdivision's public roadways into Plaintiffs' land in a manner that amount to an unconstitutional takings.

86.  Among other things, the Plaintiffs are concern with the small hole caused by Defendant Bloomfield Township and Defendant Board of Road Commissioners use of the defective Subdivision storm water drain system.  Neglecting this repair over the long term can exact a heavy toll on the Plaintiffs' and their private property, as the small repairs become large repairs.

87. As further evidence of   pattern and practice of involving similar claims of constitutional deprivations by Defendant Bloomfield Township and Defendant Board of Road Commissioners, Plaintiff Willienard Banks is aware of the case pending in Oakland County Circuit Court of *Wabeek Ridge Homeowners Association v. Wabeek Lake Improvement  Board, Board of County Road Commissioners of The County of Oakland, Bloomfield Township, et.al., Case No. 2022-195443-CH.,* involving  drainage issues with these municipalities.

88.  The Plaintiffs faces a risk of harm in this situation giving them "risk of future harm" that "is sufficiently imminent and substantial" thereby giving ….[them] standing to seek injunctive relief." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 393 (6th Cir. 2022).

89. According to Public Works Manager Fotherby and the document she provided to Plaintiff Willienard Banks by Public Works Manager Fotherby, titled "Storm Sewer Replacement 3173 Chestnut Run Drive", dated February 12, 1999, and prepared by Hubbell, Roth & Clark, Inc., Defendant Bloomfield Township replaced 100 feet of the storm sewer located within the 20 foot wide drain easement between Lots 6 and 7 in 1999. According to the plan, the total length of the existing storm sewer was 148 feet. Therefore, the northerly 48 feet of the storm sewer was left in place and a connection was provided between the old and the new piping. It is this point where the pipe connection was made that storm water is leaking out of the pipe causing the small sinkholes and surface water that Plaintiff Aaron Jackson sees in the area of the drain pipe. The plan indicates that the existing pipe invert at the southerly outlet was 900.10. **[See Exhibit 16]. [See also Exhibit 10**].

90. Defendant Bloomfield Township maintained and repaired the Subdivision's storm water drain system on Plaintiffs'' land in 1999, Defendant Bloomfield Township now claims under SWAMP that it is Plaintiffs' responsibility to maintain and repair the system that is discharging public storm water into private property.

91. Yet, according to Public Works Manager Fotherby, the Plaintiffs, can not remove, replace or repair the storm sewer on their land without the approval of Defendant Bloomfield Township and Defendant Board of Road Commissioners or can they block the storm sewer so that the public storm water remains on the public roadway and the public roadway becomes the retention pond for the public storm water instead of Plaintiffs' land.

92. The fact that Defendant Bloomfield Township has maintained the storm drain in the past is evidence that Plaintiffs 'reasonable investment-backed expectations that the government would maintain and repair the drain easement and its facilities is not unreasonable.

93.  The Boundary/Topographic/Tree Survey prepared by Nowak & Fraus Engineers, dated June 6, 2022, shows the pipe outfall invert elevation at 896.37. The water surface elevation of Orange Lake at the time of the survey was 898.90. Therefore, the storm sewer end section is 2.53 feet below the lake level. This submerged outlet condition results in a sediment buildup within the storm sewer drain system that impedes the flow of stormwater. **[See Exhibit 17 ].**

94.  The Boundary/Topographical Survey/Tree Survey prepared by Nowak & Fraus Engineers shows that Plaintiff Willienard Banks   and Plaintiff Renee Baugh's yard's lowest elevation at a point 30 feet from the back of their home is 899.11.  Plaintiff Aaron Jackson's lowest surveyed yard elevation is 899.40 feet. Plaintiff Willienard Banks   and Plaintiff Renee Baugh's  yard is 2.52 inches above Orange Lake and Plaintiff Aaron Jackson's yard is 6 inches above the Lake. The ground elevations at the southerly end of the storm sewer outlet in Plaintiff Willienard Banks   and Plaintiff Renee Baugh's yard is 899.50 and 899.66 feet, which is almost 5 inches higher than his yard. **[See Exhibit 17 ]**

95.  Even if there is a public easement over the Plaintiffs' land, the roadway water discharge from Chestnut Run Drive is not contained within this drain easement, but flows outside of the drain easement into Plaintiffs 'Willienard Banks' and Aaron P. Jackson's Lots rear yards, which amounts to a continuous trespass of water and a taking of private property for governmental use. This flooding and runoff problem is intermittent, but inevitably recurring,  due and authorized Defendants, state actors.

96.  As a matter of law, flowage rights are property rights, independent of the ownership of the fee. *Central Land Company v. Clearwater Township,* 244 Mich. 692, 694,(1928).

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

97.   The right of flowage is an easement that can only be acquired by prescription or by a writing such as a deed.  "[I]t is an easement "to flow water over another's land."" *Terlecki v. Stewart*, 278 Mich. App. 644, 660  ( 2008).

98.   Here, Defendant Board of Road Commissioners and Defendant Bloomfield Township conduct is resulting in damages and in a flowage easement from the permanent, intermittent  and frequent flooding from the storm water, which Defendants directed at Plaintiffs' lands from the public roadway which vastly exceeded the scope of the drain easement encumbering Plaintiffs' lands. Defendants are taking private property from Plaintiffs and other similarly situated landowners , by recurring flooding the land or diverting excess surface water onto the land.

99.   In 2019, Defendant Bloomfield Township and Defendant Board of Road Commissioners made improvements to the Subdivision's stormwater drain system, which included, improvements to roadway drainage

100.   In 2019, Defendant Bloomfield Township and Defendant Board of Road Commissioners did not investígate whether the storm sewer outlet for the roadway drainage system had adequate capacity to accommodate the improved stormwater drainage that directed storm water into Lots 6 and 7 from the Subdivision roadways. **[See Exhibit 10 ]**

101.   Storm water should be discharged through the easement to the receiving watercourse, which in the case of Subdivision's drainage system is Orange Lake. Instead, the storm water drain outlet or out fall is directing the storm water flows into Plaintiffs' immediate backyards, to the detriment of the Plaintiffs'

102.   Even if an easement exist across Plaintiffs' lands, Defendant Bloomfield Township

and Defendant Board of Road  Commissioners  uses must be within the scope of the plat's dedication; second, their uses must not unreasonably interfere with Plaintiffs' use and enjoyment of their property.  *Dobie v. Morrison*, 227 Mich. App. 536, 541 (1998).

103.  Even if a public easement exist across Plaintiffs' lands, Defendant Bloomfield Township and Defendant Board of Road  Commissioners  uses are not within the scope of  the plat's dedication; second, their uses unreasonably interfere with Plaintiffs' use and enjoyment of their lands. These actions by  Defendant Bloomfield Township and Defendant Board of Road  Commissioners amount to a taking.

104.  "[A] governmental actor may cause a taking of private property by flooding the property or diverting excess surface water onto the property." *Wiggins v City of Burton*, 291 Mich App 532 (2011).

105.  Defendant Bloomfield Township and Defendant Board of Road  Commissioners actions  also amount to a taking  by flooding the Plaintiffs' land  and diverting excess surface water from the Subdivision's roadways onto Plaintiffs' land.

106.  Here,  Defendant Bloomfield Township and Defendant Board of Road Commissioners installed storm water infrastructures (essentially, pipes and a catch basins)  in the Subdivisions' roadways for the legitimate purpose to reasonably assure drainage of the Subdivisions' public roadways.

107.   The improved Subdivision's roadway drainage system by Defendant Bloomfield Township and Defendant Board of Road Commissioners  resulted in an improved flowage of storm water runoff  from  the Subdivision's public roadways, which increase in  the amount  and the velocity of  storm water runoff discharged into Plaintiffs' lands from the Subdivision's roadway drainage.

108.    Defendant Bloomfield Township and Defendant Board of Road Commissioners claim that the Plaintiffs' land are private and that they have no property interest in said lands; but continue to use Plaintiffs' lands to discharge storm water runoff from Subdivision's roadways, without paying just compensation. However, "even if the Government physically invades only an easement in property, it must nonetheless pay compensation." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433 (1982).

109.    A per se taking occurs when the government acquires private property through the process of occupying  it.    A per se taking occurs when a government regulation requires that a private property owner maintain an unwanted object on their property. *Loreto*, 458 U.S. at 441. In *Loreto,* the Supreme Court held that a law requiring a property owner to allow an unwanted cable box to remain on her property constituted a per se taking. Id

110. "Takings" can fall into two general categories. The first, per se takings, occur when the government acquires, occupies, or regulates in a way that "physically appropriates" private property. *Cedar Point Nursery v. Hassid*, <u>141  S.Ct. 2063, 2071</u>-72 (2021). The second, a regulatory takings, occur when government regulation goes "too far" in restricting an owner's use of the property. Id.

111.    Defendant Bloomfield Township and Defendant Board of Road Commissioners can repair the storm water drain and facilities on Plaintiffs property by creating a shallow swale from the storm sewer end section (outfall) to Orange Lake in an attempt to contain as much storm discharge water within the easement as possible. In addition, sediment should be cleaned out of the storm sewer and the pipe should be TV inspected and repaired as the TV inspection reveals is necessary.  Ciff  Seiber,  P.E., estimates that it would cost $51,408.00 to  correct the flowage problem. **[See Exhibit 10  ].**

112.  In 2022, the Plaintiff Willienard Banks  placed sand bags around the outfall in an attempt to slow the storm water discharge water from the Subdivision's roadways so that the storm water will be slowed and not scour the land from the discharge. **[See Exhibit 18  ].**

113.  Defendant Bloomfield Township and Defendant Board of Road Commissioners  have taking from the Plaintiffs, their interests in the full use, enjoyment, and occupancy of their property.

114.  The  economic impact of Defendant Bloomfield Township and Defendant Board of Road Commissioners acts, orders, policies, practices, customs, and procedures on the Plaintiffs are significant. It will cost Plaintiffs approximately $51,408.00 to correct the flowage problem in the storm water drain system being used to benefit the public- Not  reasonable investment-backed expectations, when the Plaintiffs 'purchased their lands.

115.  Defendant Bloomfield Township and Defendant Board of Road Commissioners are attempting to offload $51,408.00 in the storm water facility repair cost onto Plaintiffs.   One of the principal purposes of the Takings Clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 49.

116.  Here, Defendants seek to take Plaintiffs' property interest and converted the property for public use without the payment of just compensation.

117.  Wayne Domine, the Director of Defendant Bloomfield Township's Engineering and Environmental Services Department from 1991 until his retirement in May 2017, testified that "[t]he Township does not own its storm-sewer system, other than the storm drains that are on the property of the Township. Rather, the storm-sewer system is owned and maintained, in concert,

by several county and state entities. " *Youmans v. Charter Twp. of Bloomfield*, 336 Mich. App.

161, 168-69 ( 2021)

118.  However, at the August 22, 2022 meeting with the Bloomfield Township's Board of

Trustees, Department of Public Works Director Noah Mehalski ("Director Mehalski") discussed

how the 2021's multiple large rain events uncovered multiple storm water conveyances that

were either owned by, deeded to, or maintained by Defendant Bloomfield Township. The Board

of   Trustees   discussed   Defendant   Bloomfield   Township's   ownership   of

stormwater   conveyances   at approximately fifty sites, all of which were sources of flooding last

year. [ **See Exhibit 19   and Video Clip of Board Discussion ]**[1]

119.  Director Mehalski discussed the stormwater drains that Defendant Bloomfield

Township maintained  in the past, that it no longer handles at this time due to budgetary restraints.

**[See Exhibit 19   and Video Clip of Board Discussion ]**[2]

120. The storm drain facility on Plaintiffs' lands appear to be one of those facilities that

Defendant Bloomfield Township installed on Plaintiffs' lands in 1999 and no longer desires to

maintain and repair due to budgetary restraints.

121.  Director Mehalski estimated that there are thousands of sites, mostly privately owned,

in Defendant Bloomfield Township. Defendant Bloomfield Township's Board members expressed

the importance of beginning to repair its storm water infrastructure to eliminate liability, especially

as extreme weather events become more common. Director Mehalski mentioned that the laws for

the sanitary sewer system are based on the knowledge of the system and its defects, emphasizing

---

[1] [Consider Storm Water Asset Cleaning and Televising Contract Award - YouTube](#)
[2] Id.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

that the Defendant Bloomfield Township has a duty to act once ownership is discovered. **[See Exhibit 19  and Video Clip of Board Discussion ]**[3]

122.   Like Plaintiffs, other similarly situated landowners, many privately own sites, which Director Mehalski estimated to be in the thousands are being used by Defendant Bloomfield Township and Defendant Board of Road Commissioners for public purposes, without the payment of  just compensation to the private land owner.

123.  On September 12, 2022, Defendant Bloomfield Township approved a contract with 5 Pipetek Infrastructure Services to pay $249,707.75  just for the inspection of fifty stormwater sights. Under SWAMP Defendant Bloomfield Township ignored the storm water sites draining storm water from public roadways on private property. **[See Exhibit 19  ].**

124.   It is Plaintiffs' knowledge and belief that to including the cost of repair, maintaince and to inspect of the numerous storm water sites disregarded by Defendant Bloomfield Township and Defendant Board of Road Commissioners would add millions in cost to Defendant Bloomfield Township and Defendant Board of Road Commissioners budget.

125.   Instead, Defendant Bloomfield Township and Defendant Board of Road Commissioners are saving money through SWAMP by violating the Plaintiffs and others constitutional rights by appropriating more property interest then they are entitled to under the U.S. Constitution and Michigan Constitution. **[See Exhibit 19    and Video Clip of Board Discussion ]**[4]

126.   Defendant Bloomfield Township and Defendant Board of Road Commissioners

---

[3] Id.
[4] Id.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

response  to the FOIA, dated September 14, 2022 makes it clear that these agreements, releases,

etc. authorizing them or their public officals and employee to discharge public water from a public

street into private property, without the payment of  just compensation. **[ See Exhibit 8  ]**

127.    As to the FOIA, dated September 14, 2022, Plaintiff Willienard Banks requested in

"Request No 1" posed to Defendant Bloomfield Township, Defendant Bloomfield Township

answered  via Defendant Director Olsztry-Budry that "the water coming off the roads is not

Township water but water coming off the RCOC controlled roads or off of private properties."

**[ See Exhibit 20  ].**

128.  By Defendant Director Olsztry-Budry acknowledging the "public water runoff" she is

also acknowledging that Plaintiffs' lands are being assesses cost greater than their pro rata benefit

to the Subdivision. **[ See Exhibit 20  ].**

129.  The plat of the Subdivision includes the following dedicatory language:

"*CHESTNUT RUN LIMITED PARTNERSHIP, A MICHIGAN LIMITED PARTNERSHIP, DULY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF MICHIGAN, BY ROBERT M. KATZMAN, GENERAL PARTNER AS PROPRIETOR, HAS CAUSED THE LAND TO BE SURVEYED, DIVIDED, MAPPED AND DEDICATED AS REPRESENTED ON THIS PLAT, AND THAT THE STREETS ARE FOR THE USE OF THE PUBLIC, AND THAT THE PUBLIC UTILITY EASEMENTS ARE PRIVATE EASEMENTS, AND THAT ALL OTHER EASEMENTS ARE FOR THE USES SHOWN ON THE PLAT; THAT LOTS 29 AND 30 SHALL NOT HAVE VEHICULAR ACCESS TO HICKORY GROVE, AND THAT LOTS 3 THRU 12 INCLUSIVE EXTEND TO THE WATERS EDGE OF ORANGE LAKE AS SHOWN ON THIS….*" **[Exhibit  13 ].**

130. The Subdivision's Building Restrictions,  Article II, Restrictions, Section 24, recorded

on July 14, 1985 in Liber 8881, page 795, provides:

"*Declarant reserves a perpetual, alienable and releasable easement and right on, over and under the ground to erect, maintain and use electrical, telephone and television poles, wires, cables, conduits, sewers, water mains and other suitable equipment for the conveyance and use of electricity, telephone, television, gas, sewer, water or other public convenience or utilities on, in or over the front ten (10) feet of each lot, and at all locations as shown on the final plat. These easements and rights expressly include the right to cut any trees, bushes or shrubbery, making any grading of the soil, or to take any other similar action reasonably necessary to provide economical and safe utility installation and to maintain reasonable standards of health, safety and*

*appearance. Such rights may be exercised by any licensee of Declarant but this reservation shall not be considered an obligation of the Declarant to provide or maintain any such utility or service."* **[Exhibit 21 ].**

131.  It appears that the original owner of the land Subdivision's Building Restrictions, Article II, Restrictions, Section 24, recorded on July 14, 1985 in Liber 8881, page 795 sough to reserve an easement in his own land.

132.  The Declarent, as owners of both the dominant and servient estates, could not have carve out an easement by grant or reservation to itself. It is black letter law in Michigan that one cannot have an easement in his own land.

132.  It is essential to an easement that there be two distinct tenements or estates, a dominant one to which the right belongs, and a servient one upon which the obligation is imposed. The Declarant can not convey an easement to itself or can it reserve an easement in own lands. See *Hasselbring v. Koepke*, 263 Mich. 466, 479 ( 1933). "The union of dominant and servient estates in the same owners extinguishes prior easements. One cannot have an easement in one's own land" *von Meding v. Strahl*, 319 Mich. 598, 605 ( 1948).

133.  Defendant Bloomfield Township and Defendant Board of Road Commissioners admit that they have no legal interest in Plaintiffs' lands, which means that they do no any right to continue to discharge storm water into Plaintiffs' lands, without the payment of just compensation.

134.  There is no language in the Subdivision's plat plans, engineering plans, or the Subdivision's Declaration of Covenants Condition and Restrictions, which place the responsibility for the maintenance and repair of the Subdivision's storm sewers on the private property owners or a private Home Owner Association ("HOA") in the Subdivision.

135.  There is no language in the Subdivision's plat plans, or the Subdivision's Declaration of Covenants Condition and Restrictions, which grants Defendant Bloomfield Township, Defendant Board of Road Commissioners or any municipality, the authority to place the responsibility for

the maintenance and repair of the Subdivision's storm sewers on the private property owners or a private HOA in the Subdivision.

136. Not only is there no such language or responsibility in the Subdivision's plat plans, or the Subdivision's Declaration of Covenants Condition and Restrictions for the maintenance of the Subdivision's roadway stormwater system but the Subdivision's Building Restrictions, Article II, Restrictions, Section 24, recorded on July 14, 1985 in Liber 8881, page 795, specifically providing that it is not considered an obligation of the developer to provide or maintain such services. **[ See Exhibit 21 ].**

137. As in *Sweeney v. Road Com'rs*, 293 Mich. 624, 630 (1940) where, "[s]o long as Mr. Stevens …[was] willing the board of county road commissioners clean out the ditch across his land, this would afford the county road commissioners authority to enter upon the premises and clean out the ditch in question. It would not constitute any protection to them against a revocation of the license either by Stevens or subsequent purchasers."

138. Here, any license for Defendant Bloomfield Township and Defendant Board of Road Commissioners may have had to use Plaintiffs' land has been revoked, Plaintiffs do not want Defendant Bloomfield Township and Defendant Board of Road Commissioners destroying their land.

139. What the Court stated in *Sweeney v. Road Com'rs*, 293 Mich. 624 (1940) is applicable to Plaintiffs here:

"The authority vested in the board of county road commissioners never gave them any authority to appropriate the freehold of plaintiff, a private citizen, and, if they have done so, he is entitled to an injunction to protect his premises either by the restoration of the same to the state in which they were prior to the action of the highway authorities or by the highway authorities taking action to procure a right of way for drainage across the premises of Stevens, or otherwise." Id.at 631.

140. Plaintiffs paid property taxes for their lots with the reasonable investment-backed expectation that Defendant Board of Road Commissioners and Defendant Bloomfield Township

would comply with the Subdivision's building and use restrictions and would not be requiring Plaintiffs' to maintain property being used for a public purpose by the government.

141.  Plaintiffs' would not have had any problems with Defendant Board of Road Commissioners  and Defendant Bloomfield  Township continued use of the license, had that Defendant Board of Road Commissioners  and Defendant Bloomfield Township followed the general rule regarding easement in Michigan.

142.  "The general rule in Michigan as elsewhere is that the user of an easement, rather than the owner of the servient estate, has the duty to maintain the easement in a safe condition so as to prevent injuries to third persons. " *Kesslering v. Chesapeake O. Ry. Co.*, 437 F. Supp. 267, 269 (E.D. Mich. 1977).

143.  Even assuming Defendant Bloomfield Township and Defendant Board of Road Commissioners have a public drainage easement property interest in Plaintiffs' land,  Defendant Bloomfield Township and Defendant Board of Road Commissioners  actions  still amount to a unconstitutional taking because they would be using the easement beyond its scope.

144.  Plaintiffs purchased their land for the same varied reasons people generally buy real estate, e.g., for a home to live in safely or as an investment.   The Plaintiffs purchased their homes with no prior knowledge or indication of anything that would subsequently subject their lands to a  permanent, intermittent  and frequent flooding from the storm water runoff  from the Subdivision's roadways, discomfort and damage from having roadway runoff discharged upon their property.

145.  Plaintiffs' reasonable investment-backed expectations regarding their lands did not include drainage problems.  The drain easement on the Subdivision's plat indicates that the storm water is to be discharged into Orange Lake, not Plaintiffs' immediate back yard.

146.  The storm water runoff overflow and backup from the Chestnut Run Drive storm water

drain has damaged the Plaintiffs' lands and is interfering with their use and enjoyment of their land. Storm sewer water run off pooling in our back yard, make it difficult to use our deck because of the mosquitos and stench.

147. Plaintiff Aaron Jackson has young children who play in their back yard. "E. Coli" bacteria and other pollutions are contained in the storm water which is flowing over Plaintiffs' lands , posing a threat to their health.

148. The government-induced flooding severely interfered with Plaintiffs' reasonable investment-backed expectations. The Seller Disclosure Act (SDA), *MCL§ 565.951 et seq.,* imposes a legal duty on Plaintiffs as sellers to disclose to buyers the existence of certain known conditions affecting the house. MCL§ 565.957(1).

149. The SDA requires a transferor to honestly disclose and to disclose in good faith information known to the transferor at the time the seller's disclosure statement is completed. See _Roberts v Saffell_, 280 Mich. App. 397, 413 (2008). The drainage problem created by Defendants is mandated by Michigan law to be disclosed and can, unless remedied, be expected to diminish Plaintiffs' land market value.

150. At this juncture, by Defendant Board of Road Commissioners and Defendant Bloomfield Township own admissions, they have no legal interest in the Plaintiffs' land. They may have had a license in the pasta license, which has terminated. "Public interest" and "public benefit" are not valid reasons to allow the Township to obtain more property rights than were granted." See *Blackhawk Development Corp. v. Village of Dexter*, 473 Mich. 33, 50 (2005).

151. The Plaintiffs have a reasonable investment-backed expectation that the government will follow the law, just as they are required to do. "[I]ndividuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." " *Powell v. Jennifer*, 937 F. Supp. 1245, 1260 (E.D. Mich. 1996).

152.  As set forth in this Complaint, inter alia, Defendant Board of Road Commissioners and Defendant Bloomfield Township actions constituted a physical, permanent, non-categorical taking for a flowage easement in Plaintiffs' lands.

153.  Plaintiffs reasonably expected that they would be able to occupy and use their homes with their rights under Michigan property law. Plaintiffs 'reasonable, investment-backed expectation was that they would have the beneficial use of their lands, improvements and all other associated property rights consistent with their property's character and customary use, not being flooded by storm water runoff from a public roadway.

## B.  DEFENDANTS' UNCONSTITUTIONAL STORM WATER ASSET MANAGEMENT POLICY

154.  Defendant Board of Road Commissioners and Defendant Bloomfield Township actions violate Plaintiffs 'protectable property rights, which are recognized and protected under Michigan law.

155.  Though SWAMP Defendant Board of Road Commissioners and Defendant Bloomfield Township has developed a history and rational for their operating policy and custom of imposing public storm water runoff from public subdivisions 'roadways on private lands without the benefit of public drain easement or other legal rights and requiring the private land owners to repair and maintain public storm water drainage infrastructure on private property without paying just compensation.

156.  As is set forth in this Complaint, Defendant Board of Road Commissioners and Defendant Bloomfield Township purposefully engineered, designed, and operates SWAMP to appropriate benefits to Defendant Board of Road Commissioners and Defendant Bloomfield Township and offload burden to Plaintiffs and other property owners.

157.   There are numerous e-mail, which Plaintiff Willienard Banks received through a FOIA where Bloomfield Township employees and public official indicate that Defendant Board of Road Commissioners is only responsible for drainage within the public road ROW and Defendant Bloomfield Township not responsible for drainage within the public roadway at all.

158.  Professional Engineers such as Angela Hysinger, P.E., CFM [**Exhibit 22** ] should know that a municipality may not by *ipse dixit* discharge  public storm water into private property without just compensation. However,  it is a practice or custom acquiesced in by Defendant Board of Road Commissioners and Defendant Bloomfield Township for the  Defendant Board of Road Commissioners is only responsible for drainage within the public road ROW and Defendant Bloomfield Township not responsible for drainage within the public roadway at all.

159.   Defendants rely on non-existent or irrelevant rules to discharge public storm water into private property without any legal right to do so. Both Defendant Board of Road Commissioners and Defendant Bloomfield Township are  benefitted by discharging the storm water runoff into private property without just compensation.

160.  Wayne Domine, the director of Bloomfield Township's engineering and environmental services department from 1991 until his retirement in May 2017, in *Youmans v. Charter Twp. of Bloomfield*, 336 Mich. App. at  168 admitted that the "sewer system is a separated system , with "one set of pipes for sanitary sewage" and a separate storm-sewer system that is "intended to collect storm water runoff or ... water from the land" and discharge such water directly into a waterway. "

161.  In *Youmans v. Charter Twp. of Bloomfield*, 336 Mich. App. at 188, Thomas Trice, the former director of Defendant Bloomfield Township's Department of Public Works indicated anytime the storm-sewer system floods as a result of improper maintenance, storm water would

get into the sanitary sewer system and could cause damage (e.g., it could collapse Township pipes)."

162.   SWAMP define private property in a way to eliminates  otherwise cognizable claims under the Takings Clause of the Fifth and Fourteenth  See  *Hagy v. Demers & Adams*, 882 F.3d 616, 623 (6th Cir. 2018).   "The government may not decline to recognize long-established interests in property as a device to take them. " *Hall v. Meisner*, No. 21-1700, at *1 (6th Cir. Oct. 13, 2022). **[Exhibit 23 ].**

163.   SWAMP is absolutely antithetical to the U.S. Constitution and Michigan Constitution. The Defendants, through SWAMP, are expropriating private,  while violating preeminent principles of constitutional law.  "An unconstitutional policy can include both implicit policies as well as a gap in expressed policies." *Morgan v. Wayne County, Michigan*, 33 F.4th 320, 329 (6th Cir. 2022) citing *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir.2009).

164.   A municipal "policy" need not be a written ordinance, but may be a "statement" or "decision" by a municipal official "whose edicts or acts may fairly be said to represent official policy." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978).

165.   A single act by a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered" may suffice in demonstrating that policy or custom. *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986).

166.   SWAMP is officially adopted and promulgated by Defendant Bloomfield Township and Defendant Board of Road Commissioners and are persistent, widespread practices of Defendant Bloomfield Township and Defendant Board of Road Commissioners and employees, and, if not authorized or  officially adopted and promulgated policy, is so common and well settled as to constitute law.

167.  SWAMP have the practical effect of appropriating for Defendant Bloomfield Township and Defendant Board of Road Commissioners: (1) the value of their uncompensated use of  private property; (2) the value of drain facilities' storm water management operation, maintaince and repair cost offloaded to private land owners for public improvement by Defendant Board of Road Commissioners  and Defendant Bloomfield Township.

168.  As evidence of SWAMP, Defendant Board of Road Commissioners and Defendant Bloomfield Township have public- outreach efforts regarding SWAMP.  There are written public summaries on their websites. These stated polices are  available to the public online. According to Defendant Bloomfield Township on it's website, Defendant Board of Road Commissioners and Defendant Bloomfield Township  maintenance responsibilities include "storm sewers, ditches, forestry and signs in the R.O.W. on the public roads."  **[See Exhibit 24  ].**

169.  As explained on Defendant Bloomfield Township's  website, it has a catch basin cleaning program through its storm sewer network and performs cleaning operations throughout Oakland County." **[See Exhibit 25  ].**

170.   Defendant Bloomfield Township, Defendant Board of Road Commissioners' SWAMP does not permit it to maintain or repair the portion of the storm sewer off the Subdivision's public roadway R.O.W..

171.   In the spring of 2021, the Plaintiffs' lands started to be damaged by storm water from the Subdivision's public roadway, as set forth in this Complaint from  storm water runoff that the Defendants intentionally and deliberately discharge  into the Plaintiffs' lands from the Subdivision's public roadways.

172.   On June 15, 2021,  Plaintiff Willienard Banks first contacted Defendant Board of Road  Commissioners  by  telephone  regarding overflow  and  backup  of  storm  water  the   in Plaintiffs 'backyards, which was the results of storm water entering the storm water drain system's

catch basin inlets on Chestnut Run Drive and being discharge via a culvert into the backyards of Lots 6 and 7, instead of Orange Lake.

173.   With regards to Defendant Board of Road Commissioners, on June 15, 2021, he notified Defendant Board of Road Commissioners via telephone about the overflow and backup events, which was sufficient to trigger Defendant Board of Road Commissioners' s obligation under *MCL 691.1419(2)* of the Sewer Disposal Act.

174.   On June 16, 2021, Plaintiff Willienard Banks received an e-mail from Defendant Board of Road Commissioners stating: "THE BASIN AND CULVERTS ARE CLEAN AND FLOWING," Plaintiff Willienard Banks called back to Defendant Board of Road Commissioners customer service and complaint that checking the storm sewer intake is not helpful when where the surface water is being discharged is the problem. Plaintiff Willienard Banks explained to Defendant's RCOC's telephone intake person that storm water from the Chestnut Run Drive storm water drain system was not contained in the drain easement, that surface water was overflowing and backing up.

175.   Plaintiff Willienard Banks was informed by Defendant Board of Road Commissioners that it only had a duty to repair and maintain the improved portion of Chestnut Run Drive designed for vehicular travel and is not responsible for repairing and maintaining the storm water drain system on private property, i.e., SWAMP.

176.   Defendant Bloomfield Township public- outreach efforts in its summer of 2021 newsletter partially explained SWAMP:

*"My yard is flooded, who fixes it?*

*Drainage systems within the Township are likely owned and maintained by one of the following three entities:*

*1) Oakland County Water Resource Commission (OCWRC). A county drain can be an open ditch, stream or underground pipe. It also could be a detention pond or swale that conveys storm*

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

*water.*
*2) Road Commission for Oakland County (RCOC). Some drains, including roadside ditches,*
*pipes and culverts under roads are maintained by the Road Commission for Oakland County.*
*3) Private drains that are not county drains or along roads are likely the responsibility of*
*individual property owners or the Homeowners Association (HOA). Call 248-594-2800 for a*
*checklist and survey form for property owners on how to maintain detention basins.*"   **[See
Exhibit 26  ].**

178.   Defendant Bloomfield Township and Defendant Board of Road Commissioners

SWAMP *ipse dixit* , impose the responsibility for maintaince and repair of drains draining public

storm water from public subdivision roadways onto the landowners, such as Plaintiffs whose

property the drain easement encumbers.

179.   Plaintiffs Willienard Banks send email Defendant Bloomfield Township's Board of

Trustees on August 24, 2021, attempting to get Defendant Bloomfield Township to stop occupying

private lands  [ **See Exhibit 27 ].**

175.   Defendant Township Supervisor  Walsh   did respond with an e-mail, which stated in

part the following:

*"Unlike a city who owns their infrastructure and get funding and resources from the state to*
*maintain their specific infrastructure, townships do not own the roads or storm sewers since those*
*are at the County level so all funding and resources go directly to the County to maintain their*
*specific infrastructure. Those of us with private easements in our residential areas bear the burden*
*of maintaining our private easements.*   [ **See Exhibit 27 ].**

176.   Defendant Township Supervisor  Walsh   is an employee of Defendant  Bloomfield

Township who believes that private property owners must bear the burden of maintaining storm

water  infrastructures  that  government  actors  are  using  for  a  public  purpose  without  just

compensation.   [ **See Exhibit 27 ].**

177.   Bloomfield Township Supervisor Dani Walsh had the authority to make a decision

to  stop  the  flooding  and  storm  water  runoff  into  the  Plaintiffs'  land  from  the  Subdivision's

roadways; but she let the unconstitutional taking continue unabated.

178.   Bloomfield Township Supervisor Dani Walsh is  a public official relying  on policy

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

and customs that are contrary to Michigan statutes, and clearly unconstitutional.

179. There are affirmative links between SWAMP and the constitutional violations complained of in this Complaint by Plaintiffs', which shows that the Defendants have knowledge of similar unlawful conduct in the past . . . failed to take precautions against future violations, and that their past failures, at least in part, lead to the Plaintiffs' constitutional damages and/or the continuation of the Plaintiffs' constitutional damages.

180. In one case involving a Special Assessment District ("SDA"), Defendant Director Olivia Olsztry- Budry admitted in an e-mail dated July 13, 2021 that:

*"The RCOC that " went out and verified that the culvert and structure installed as part of the road paving SAD are functioning correctly. The RCOC then visually looked up the pipe that runs between your property and your neighbors to the west of you and could see that the pipe is blocked by what appears to be tree roots. This is likely what is causing the water not to drain to the north.*

*The drainage pipes and swales that run along the side yards and rear yards are not under the jurisdiction of the RCOC or the Township, and are private. I don't have any record of the drainage system that runs in the side and rear yards of the properties. This is not uncommon that drainage systems outside of the road right of way are private in Bloomfield Township."* **[ See Exhibit 28 ].**

180. SWAMP is a unconstitutional policy or custom the Defendants rely on to discharge public storm water into private property without just compensation, while requiring the private property owner to maintain public infrastructure from the public roadway.

181. The public official, such as Defendant Director Olivia Olsztry- Budry even provide private contractors for the private land owner to use to maintain and repair the storm water infrastructure being used for a public purpose **[ See Exhibit 28 ].**

182. Some private land owner may think that these public official, are being helpful but they are actually violating the land owners constitutional rights.

183. The Defendants appears not to be overly concerned about the amount, direction or velocity of the storm water after the storm water is removed from the public roadway and discharged into private property. As Cory Borton, Asset Manager Coordinator for Defendant

Bloomfield Township stated in an e-mail to a landowner having a drainage issue with Defendant Bloomfield Township and Defendant Board of Road Commissioners:

"*The storm sewer across the street is private. It is not owned or maintained by the Township and is not likely to be owned or maintained by the Road Commission for Oakland County (RCOC). Therefore, any maintenance of the storm sewer would be the responsibility of the property owners. During construction of the upcoming Porters Lane Sanitary Sewer and Water Replacement project, it is likely that we will be impacting the storm sewer to some extent. Any damage or removal of portions of the storm sewer that may occur during the project will be replaced. This will not involve total replacement though. So, I can not guarantee that any work we do on the storm sewer will improve how it functions.*" **[See Exhibit 29 ].**

184. There is a pattern and practice of similar constitutional deprivations that the Plaintiffs are complaining of in this Complaint. Under SWAMP, Defendants discharge storm water runoff into private property with impunity. Defendants promulgate policy or, at a minimum, adopted "a custom of acquiescence to or tolerance of rights deprivations" regarding the Plaintiffs and others.

185. Defendants actions runs counter to Plaintiffs' reasonable investment-backed expectations in the residential they own. Defendant Board of Road Commissioners and Defendant Bloomfield Township have a pattern and practice of using private property without paying just compensation, by claiming that the storm water sewers they are using for a public purpose is not dedicated to Defendant Board of Road Commissioners, Defendant Bloomfield Township or other County Agency.

186. The SWAMP program violate the Takings Clauses of the Fifth and Fourteenth Amendment of the United States Constitution and is a recent manifestation of the government declining not to recognize long-established interests in property as a device to take them. See *Hall v. Meisner*, No. 21-1700, at *1 (6th Cir. Oct. 13, 2022). "[A] State, by *ipse dixit*, may not transform private property into public property without compensation" simply by

legislatively abrogating the traditional rule that " the user of the easement has the duty to maintain the easement in a safe condition so as to prevent injuries to third persons. " *Kesslering v. Chesapeake O. Ry. Co.*, 437 F. Supp. 269. See also *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 167 (1998).

### C. THE CHESTNUT RUN SOUTH PAVING PROJECT- UNCONSTITUTIONAL AS APPLIED TO PLAINTIFFS

187.   Defendant Board of Road Commissioners and Defendant Bloomfield Township, through their actions in connection with the design, use, and operation of the Subdivision's Chestnut Run South Paving Project, SAD - 419, Project No. 55172 ( "Project")  has subjected the Plaintiffs 'private property to a permanent liability of flooding, storm water run off, etc.

188.   In 2018, the Subdivision's public roadways were in a state of serious disrepair. Subdivision landowners were advised by Defendant Bloomfield Township and Defendant Board of Road Commissioners that the cost of the Subdivision's roadway improvements must be borne by the Subdivision's landowners through a  SAD under  Act 188 of the Public Act of 1954., *MCL §§ 41.721* et. al.

189.   Since 2012 there have been at least 19 SAD project through Defendant Bloomfield Township pursuant to Act 188 of the Public Act of 1954., *MCL §§ 41.721* et. al. **[See Exhibit 30 ].**

190.   If  the other SADs are like the Chestnut Run South Paving Project, SAD - 419, Project No. 55172 ( "Project") it appears  that these projects too  promulgate policy or, at a minimum, adopted  "a custom of acquiescence to or tolerance of private rights deprivations by discharging storm water runoff or flooding private property without paying just compensation but requiring private property owners to maintain the drainage infrastructures.

191.    The Defendant Bloomfield Township's and Defendant Board of Road Commissioners 'authorized action was design, use, and operation of the Project in a manner that they intended, and knew, among other things, would discharge government authorized flooding and storm water runoff into private lands located in the Subdivision without just compensations.

192.   The Defendants in this Complaint intended these SAD projects to occupy private property of land owners, where Defendants can burden private property owners.

193.    With regards to the Project, a official petition was returned to Defendant Bloomfield Township signed by 58.16% of the land owners that consists of 56.76% of the frontage along the roads referenced above to create a special assessment district under Act 188 of the Public Act of 1954. The paving of the Subdivision public roadways provides access to the thirty seven (37) lots the Subdivision, Chestnut Run Drive, Stoneridge Lane, and Laurelwood Court.

194.   Defendant Bloomfield Township and Defendant Board of Road Commissioners repaved and made other related improvements to the public roads within the Subdivision. The Project consisted of replacing approximately 0.73 miles of the existing asphalt roads, total curb and gutter removal and replacement, and a bituminous (asphalt) pavement four (4) inches thick placed full width over the cement treated full depth reclamation base with minor drainage improvements and sodded shoulders.

195.   Defendants, under SWAMP and the Project purposefully constructed, designed, and operated Project, pursuant to Act 188 of the Public Act of 1954., *MCL §§ 41.721* et. al. to direct storm water and discharge it into Plaintiffs' private property, with the responsibilities to repair, maintain, and improve the storm water drainage system on the private property being offloaded to the individual property owners or the private HOA.

196.   As set forth in this Complaint, Defendant Board of Road Commissioners and

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

Defendant Bloomfield Township share jurisdiction over the Bloomfield Township's subdivisions' public roadways.  Although Defendant Bloomfield Township's subdivision roadways are under the jurisdiction of Defendant Board of Road Commissioners, Defendant Bloomfield Township performs maintenance on the surface of public residential roads.  "Both townships and county road commissions have constitutional authority to exercise reasonable control of highways. Thus, neither has exclusive control" *Oshtemo Charter Twp. v. Kalamazoo Cnty. Rd. Comm'n*, 841 N.W.2d 135, 142 (2013).

197.  *MCLA  § 247.351* provides:

*"The township board of any township and the board of county road commissioners in which said township is located are hereby authorized and shall have power to enter into a contract to provide for the acquisition, construction, establishment, opening, altering, improving and maintaining of any highways within the township. Said highways shall be deemed to include such bridges, culverts, storm sewers and other drainage structures, and traffic control and regulatory devices, as may be necessary to provide a complete highway."*

198.  Under a plain unambiguous reading of  *MCLA § 247.351*,  both Defendants have the legal authority to enter into contracts to repair and maintain "*storm sewers and other drainage structure….as may be necessary to provide a complete highway." MCLA  § 247.351.*

199. The claim by Defendant Bloomfield Township's public officials that Defendant Bloomfield Township  is limited to the performance minor maintenance repairs on the surface of its subdivisions' public roadways  is  a fiction.

200.  Under MCL § 42.10 (c) it is Defendant Supervisor, as Township Supervisor, not Bloomfield Township's landowners, who the Michigan Legislature charge with  the construction, repair and maintenance of the sewers.

201.  *MCL  § 42.10*  permits Defendant   Bloomfield Township "to appoint a township superintendent" and provides that Defendant Bloomfield Township may delegate to him or her

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

"the duties." Since there is not a township superintendent, in the absence of such a delegation, Defendant Township Supervisor Walsh exercises these duties.

202.    Under the plain unambiguous language of _MCL § 42.10_ , Defendant Township Supervisor Walsh's functions and duties includes:

*To see that all laws and township ordinances are enforced;(b) To manage and supervise all public improvements, works, and undertakings of the township;(c) To have charge[5] of the construction, repair, maintenance, lighting and cleaning of streets, sidewalks, bridges, pavements, sewers, and of all the public buildings or other property belonging to the township…"*

203.    When it comes to public subdivision storm water drainage systems, Defendant Bloomfield Township and Defendant Board of Road Commissioners through SWAMP offload their drainage responsibility to the private land owner without due process, equal protection or paying just compensation, as set forth in this complaint.

204.    Notwithstanding Defendant Bloomfield Township's and Defendant Board of Road Commissioners' statutory responsibilities to maintain the subdivisions' roadways, subdivision roadways are often in such a serious state of disrepair that Defendant Bloomfield  Township residence petition for public roadway improvements pursuant to Act 188 of the Public Act of 1954., *MCL §§  41.721* et. al, which establishes a special assessment district ("SAD") where Defendant Bloomfield pays for the public subdivision roadway improvements through special tax assessments.

205.    On or about June 6, 2019, Defendant Bloomfield Township and Defendant Board of Road Commissioners entered into an agreement, titled "Bloomfield Township Road Paving Service Agreement". **[ See Exhibit 31 ].**

---

[5] _Blacks Law Dictionary,_ 291 (11th ed. 2019) definition of "charge" is "[a]n assigned duty or task[.]"

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

206.    The roadways within the Subdivision's Project are public roads are under the juridiction of the Defendant Board of Road Commissioners and Defendant Bloomfield Township.

207.    Defendant Bloomfield Township received a valid petition in accordance with Act 188, P.A. 1954, as amended, from homeowners in the Subdivision, all located in Section 9 of Bloomfield Township, to pave the roadways located within the Subdivision.

208.    The public roadways paved pursuant to the Project were Chestnut Run Dr., Stoneridge Lane, and Laurelwood Court.

209,    It was necessary in the opinion of Defendant Bloomfield Township to pave and improve Chestnut Run Dr., Stoneridge Lane, and Laurelwood Court located in the Subdivision;

210.    Defendant Bloomfield Township intended to improve the road and fund the Project through the special assessment process under Act 188, PA 1954, as amended;

211.    Defendant Board of Road Commissioners perform on behalf of the Defendant Bloomfield Township all services for the Project, including but not limited to all preliminary engineering and design, bidding procedures, construction engineering and inspection, and administrative services in reference to the Project, subject to the provisions of the Agreement.

212.    Upon approval of the engineering plans by Defendant Bloomfield Township, and notice from Defendant Bloomfield Township that its Hearing on Objections to the Petition was held, Defendant Board of Road Commissioners bid the construction of the Project.

213.    The engineering plans for the Project was designed by Defendant Supervisor Saporsky on March 30, 2019.

214.    Operating under the SWAMP of imposing flooding and storm water runoff into private property without the benefits of a public flowage easement or other legal rights, Defendant Supervisor Saporsky engineering plans was engineered to improved the storm water runoff and flooding and direct the government induced public storm water into Plaintiffs' lands, lots 6 and 7.

PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF

215.   Defendant Bloomfield Township and Defendant Board of Road Commissioners The Project documents **[See Exhibits 32, 33 and 34**] illiterates that they did nothing to determine if Plaintiffs' land accommodate the public storm water runoff.

216. Defendant Deputy Managing Piotrowicz and Defendant Managing Director Kolar approved the engineering plans for the Project designed by Defendant Supervisor Saporsky on or about March 30, 2019.

217.   Operating under the SWAMP of imposing flooding and storm water runoff into private property without the benefits of a public flowage easement or other legal rights, Defendant Deputy Managing Piotrowicz and Defendant Managing Director Kolar approved Defendant Supervisor Saporsky engineering plans engineered to improved the storm water runoff and flooding and direct the government induced public storm water into Plaintiffs' lands, lots 6 and 7. Under SWAMP, whether the storm sewers on the Plaintiffs' land have the adequate capacity accommodate the storm water that enters it was not a concern of the Defendant Deputy Managing Piotrowicz, Defendant Managing Director Kolar or Defendant Supervisor Saporsky .

218.   The work performed by the Defendants for the Project was a governmental function as is set forth in the Agreement and performed under color of law.

219.   On or June 19, 2019, Defendant Board of Road Commissioners entered into an agreement Asphalt Specialist Inc., a Michigan Corporation to completed the Project. The contract with Asphalt Specialist Inc., was to be completed on or before October 7, 2019.

220.   Defendant Managing Director Kolar exercised general supervision over construction of the Project to insure that the plans and specifications are strictly followed, which has resulted in the permanent, intermittent and frequent flooding of Plaintiffs' land from the governmental Project, a governmental Project, which was approved of by all named Defendants. The Project was by definition designed and engineered to improve the volume of storm water flow from the

Subdivision roadways, which discharge 80% the storm water run off into Plaintiffs' lands, lots 6 and 7.

221.   Defendant Olivia Olsztry-Budry, P.E. as Defendant Bloomfield Township's engineer prepared a preliminary estimate of the cost of the Project in the amount of $1,281,686.43 and the tentative assessment amount is $34,640.17 per property.

222.   Defendant Olivia Olsztry-Budry, P.E. prepared the engineering plans describing the Project, which plans and preliminary estimate of the cost of the Project was filed with the Township Clerk prior to the public hearing. Defendant Olivia Olsztry-Budry, P.E. approved the final engineering plans. **[See Exhibit 11 ].**

223.   In the road paving service agreements involving the numerous SAD road projects between Defendant Bloomfield Township and Defendant Board of Road Commissioners, they authorized Defendant Managing Director Kolar and Defendant Director Olsztry-Budry to design engineering plans and construction  in reference to SAD's projects that intentionally do nothing to regulate the discharge of storm water management from the public roadway into private property because under Defendant Bloomfield Township's and Defendant Board of Road Commissioners' SWAMP,  water management activities, stop at the public roadways' R.O.W.

224.   Defendant Bloomfield Township's and Defendant Board of Road Commissioners, *ipse dixit* , impose the responsibility for maintaince and repair of drains draining public storm water from public subdivision roadways onto the landowners, such as, Plaintiffs.

225.   Defendant Bloomfield Township's and Defendant Board of Road Commissioners' Boards voted for the SAD subdivisions roadway improvements project, which continues the existence of a custom of tolerance of or acquiescence to federal rights violations where Defendants violated Plaintiffs' constitutional right to be free from unconstitutional governmental takings.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

226.   Defendant Managing Director Kolar is  the Managing Director for Defendant Board of Road Commissioners whose responsibility is   to "make surveys ordered by the board, prepare plans and specifications for roads, bridges, and culverts, and exercise general supervision over construction to insure that the plans and specifications are strictly followed." See *MCL § 224.10(2).*

227.   The Defendant engineers who are being sued individual either encouraged the  incident of unconstitutional misconduct or directly participated in it. Defendant engineers knew they were operating under a concept  imposing storm water runoff and flooding into private property without the benefit of a   public   easement or other legal rights, where Defendant Board of Road Commissioners  and Defendant Bloomfield Township  admit to having no jurisdiction over the private property they are discharging storm water  and flooding.

228. The Defendant ran no test before discharging the storm water into Plaintiffs 'land.  The events that are occurring on the Plaintiffs 'lands are only the natural consequences of the actions of the Defendants. If the Defendant engineers had run test, examine Plaintiffs 'lands in advance, they would have predicted the flooding and runoff  that is occurring on and damaging Plaintiffs ' lands.

229.   The  Defendants actually knew  their conduct would cause increased water to flow onto Lots 6 and 7, Plaintiffs 'lands.  The Project was designed and engineered to improve the storm water runoff into lots 6 and 7.

230. Defendants knew or reasonably should have known that, by increasing , they were disrupting a working system that would affect the drainage or diversion of storm water runoff so

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

as to cause its intrusion onto Plaintiffs 'lands. *Drainage Manual Chapter 7 §    7.4.8.1 Introduction, page 7-61[6]* states:

*"A storm sewer is defined as that portion of the storm drainage system that receives runoff from inlets and conveys the runoff to some point where it is then discharged into a channel, water body, or piped system. A storm sewer may be a closed-conduit, open-conduit, or some combination of the two. Storm sewers should have adequate capacity so that they can accommodate runoff that enters the system."*

231.   In *Township of Lake v. Millar,* 257 Mich. 135, 140 (1932), as a matter of  Michigan common law, the court stated:

*"A drain is an incident to street building. No engineer would think of constructing a street without providing for the drainage of that street. It is an essential element of good workmanship and substantial construction, and it is highly important that drains be provided to prevent the accumulation of water upon the surface of the street and adjacent territory, for the purpose of preventing early decay and deterioration of the street."*

232.   *Drainage  Manual  Chapter  7  §   7.1  INTRODUCTION/PURPOSE,*  page  7-6[7], provides for the drainage of a roadway storm drain system as follows:

*"In the design of an enclosed drainage system, it is necessary to have complete and accurate information regarding the existing drainage system. Before an existing storm sewer can be used to drain a new roadway or improvement, its size, location, structural condition, and capability to accept any additional flow must be carefully scrutinized. Occasionally, the original survey needs to be supplemented with additional drainage information."*

233.  *Drainage Manual Chapter 7 §* Storm Drains 7.5.2 pages 7-93[8] provides:

*"The maintenance involved in storm drain systems is the removal of any sand, silt, or debris and the maintenance of a tight seal at each pipe joint. There are occasions where abrasive material is present in the water (or some chemical that has a deleterious effect on the pipe) that causes the pipe material to be worn away. This necessitates relining the pipe to preserve its integrity. It is recommended that the entire storm system be inspected prior to any major re-construction project. If capacity is in question due to urbanization, tap-ins may be necessary to increase system capacity."*

---

[6] MDOT Drainage Manual - Chapter 7 (michigan.gov)
[7] Id.
[8] Id.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

234. In the design of any subdivision's plan for a subdivision's roadway storm system drainage, it was necessary for Defendant Bloomfield Township and Defendant Board of Road Commissioners "to have complete and accurate information regarding the existing drainage system." Id. Before the Subdivision's "existing storm sewers can be used to drain a new roadway or improvement, its size, location, structural condition, and capability to accept any additional flow must be carefully scrutinized.

235. Defendant Managing Director Kolar, Defendant Director Olsztry-Budry, Defendant Deputy Managing Piotrowicz and Defendant Supervisor Saporsky directly participated in the adverse action regarding the engineering design of the Project's Subdivision's roadway storm water sewer system ending at the Subdivision's public road and discharging public storm water into private property.

236. Defendant Managing Director Kolar, Defendant Director Olsztry-Budry, Defendant Deputy Managing Piotrowicz and Defendant Supervisor Saporsky , as professional engineers were integrally involved in the initial property-deprivation decision to discharge public storm water from a public subdivision roadway into private property without checking to see if the storm sewer had adequate capacity to accommodate the storm water runoff.

237. At all relevant times Defendant Managing Director Kolar, Defendant Director Olsztry-Budry, Defendant Deputy Managing Piotrowicz and Defendant Supervisor Saporsky , as professional engineers lend aid, cooperation, or encouragement to Defendant Bloomfield Township's and Defendant Board of Road Commissioners' SWAMP and participated in the common plan or design, or written approve of the work that constituted Project, which discharges storm water into the Plaintiffs' private property, giving rise to constitutional violations.

238. The Plaintiffs' are suing Defendant Managing Director Kolar, Defendant Director Olsztry-Budry, Defendant Deputy Managing Piotrowicz and Defendant Supervisor Saporsky in

PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF

their individual capacities for their conduct in designing,  approving and engineering a project that is discharging public storm water into Plaintiffs' private property, without just compensation or due process, giving  rise to a constitutional violation in accordance to SWAMP.

239.  At all relevant times, Defendants acted with deliberate indifference with regards to Plaintiffs 'constitutions rights to be free from unconstitutional governmental takings, which are still causing damage to Plaintiffs 'lands.

240.  Defendants discharge or cause to be discharged storm water runoff from public roadways into private property with no concerns as to whether the land owner's property  has adequate capacity to accommodate the storm water  runoff that is being discharge into the property. When the land owner complains, the retort is: "It is your private easement burden." **[See Exhibit 27]**. Or I did not find anything indicating that the storm sewer was dedicated to the  Township or the Road Commission.  Therefore, the storm sewer is private and either be the responsibility of the residents or the HOA. **[See Exhibit 35].**

## D.  LOCAL GOVERNMENTAL OFFICIAL ARE NOT ENTITLED TO QUALIFIED IMMUNITY

241.    Defendant Managing Director Kolar,  Defendant Director Olsztry-Budry,  Defendant Deputy Managing Piotrowicz and Defendant Supervisor Saporsky  are not  entitled to qualified immunity from Plaintiffs 'claims of these Defendants violating their constitutional right to be free from unconstitutional governmental takings.

242.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,  (1982).

243.  "An official may, however, be held personally liable for civil damages for unlawful official action if that action was not objectively reasonable in light of the legal rules that were clearly established at the time it was taken." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir.2011).

244.  For more than 100 years, the Supreme Court has  clearly established that" property may be taken by the invasion of water where subjected to intermittent, but inevitably recurring, inundation due to authorized Government action. *United States v. Cress,* 243 U.S. 316,  (1917) ; *Lenoir v. Porters Creek Watershed Dist*, 586 F.2d 1081, 1094 (6th Cir. 1978).

245.  For more than 40 years, the Supreme Court has clearly established that "even if the Government physically invades only an easement in property, it must nonetheless pay compensation." *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 433 (1982).

246.  The Defendants being sued in their individuals capacity are not  entitled to qualified immunity. As explained above, there is no question that Defendants violated  Plaintiff's constitutional right to be free from unconstitutional governmental takings.

### E. PLAINTIFFS ARE  ENTITLED TO PUNITIVE DAMAGES

247.  Private property residents  are entitled to seek an award of compensatory and punitive damages from public offices, Defendant Managing Director Kolar,  Defendant Director Olsztry-Budry,  Defendant Deputy Managing Piotrowicz,. Defendant Township Supervisor Walsh and Defendant Supervisor Saporsky (in their individual capacity) under 42 U.S.C. § 1983 for the constitutional  violations. See *City of Newport  v. Fact  Concerts, Inc.,* 453  U.S.  247,  267, 271 (1981).

248.   Punitive damages permitted on the basis of punishment of the wrongdoer, not so much on the nature and extent of the injury as on the "oppression of the party who does the injury." *Vetters v. Berry*, 575 F.2d 90, 96 (6th Cir. 1978).  "Under federal law, a plaintiff who proves a cause of action under § 1983 may recover punitive damages whenever compensatory

damages are established, even if nominal." *Moreno v. Hughes*, 157 F. Supp. 3d 687, 691 (E.D. Mich. 2016).

249.  Plaintiffs seek compensatory and punitive damages. Punitive damages are available under § 1983. To recover punitive damages in a § 1983 action, Plaintiffs must prove that Defendants acted with malice or with reckless or callous indifference to the federally protected rights of others. See *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015).

250. The Plaintiffs do not content that Defendant Managing Director Kolar,  Defendant Director Olsztry-Budry,   Defendant  Deputy  Managing  Piotrowicz,  Defendant  Township Supervisor Walsh and Defendant Supervisor Saporsky  acted with malice towards them.  Plaintiffs do  not  belive  that  Defendant  Managing  Director  Kolar,   Defendant  Director  Olsztry-Budry, Defendant Deputy Managing Piotrowicz Defendant Township Supervisor Walsh and Defendant Supervisor Saporsky was motivated by an evil intent, other than to offload municipal obligation onto private parties to help balance the municipal budget.

251. However, because the illegality of SWAMP imposing flooding, and discharging storm water runoff into private lands without the benefits of a public flowage easement or other legal rights, it should have been apparent to Defendant Managing Director Kolar,  Defendant Director Olsztry-Budry,  Defendant Deputy Managing Piotrowicz,  Defendant Township Supervisor Walsh and  Defendant Supervisor Saporsky, are acting with recklessness towards  federally-protected rights  in  enforcing  SWAMP   that  violated  Plaintiffs'  constitutional  right  to  be  free  from unconstitutional governmental takings.

252.  One acts with reckless indifference to the rights of others when one's conduct, under the circumstances, manifests a complete lack of concern for the rights or safety of another. *King v. Zamiara*, 788 F.3d 216. The actions of the Defendants as alleged in this Complaint reflects complete indifference to the safety and rights of  Plaintiffs and others.

253.  It  appears to be of little concern to these Defendants  that the private property these SAD project are discharging storm water runoff into  may not have the capacity to accommodate the runoff that enters the Subdivision's  public roadway drain system without damaging  private property.

## F.  DECLARATORY RELIEF ALLEGATIONS

254. Plaintiffs hereby re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-253 as though fully set forth herein.

255. An actual and substantial controversy exists between Plaintiff and Defendants as to their legal rights and duties with respect to whether the Ordinance violates the United States Constitution on its face..

256. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether the Defendants' actions violates the United States Constitution as applied to the Plaintiffs.

257. This case is presently justiciable because SWAMP and Defendants actions with regards to the Project as applies to Plaintiffs on their face, have been applied against the Plaintiffs.

258.  Declaratory relief is therefore appropriate to resolve this controversy.

## G.  INJUNCTIVE RELIEF ALLEGATIONS

259. The Plaintiffs hereby re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1- 258 as though fully set forth herein.

260. Plaintiffs alleges that their constitutional rights, including the right to be free of uncompensated governmental takings have been violated.  If it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated. *American Civil Liberties Union v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003)

261. In the instant case, there is no indication that a preliminary injunction enforcing the terms of the Plaintiffs' constitutional rights would cause any harm to third parties.  "If the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Am. Civil Liberties Union Fund of Mich. v. Livingston County*, 796 F.3d 636, 649 (6th Cir. 2015).

262. "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, "the likelihood of success on the merits often will be the determinative factor."  *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

263.  If not enjoined by this Court, Defendants will continue to act in derogation  of Plaintiffs' constitutional rights.

264.  Accordingly, injunctive relief is appropriate

## CAUSES OF ACTION

### COUNT I.
### Takings Clause of the Fifth Amendment —42 U.S.C. §1983
### (Per se)

265.  Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs  1 through  264 as though fully set forth herein.

266.  Physical takings are the "classic taking[s] in which the government directly appropriates private property for its own use." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324 (2002).

267.  Both on its face and as applied in this case,  as set forth in this Complaint, the Project and SWAMP, effectively permit Defendant Bloomfield Township and Defendant Board of Road Commissioners to occupy the Plaintiffs' lands and the lands of other similarly situated land owners.

268.   Inter alia, Defendant Bloomfield Township and Defendant Board of Road Commissioners' actions constitute a physical, permanent, non-categorical taking for a flowage easement in the Plaintiffs' lands.  The flooding of storm  water runoff onto the Plaintiffs' private property is a regular condition, not  one which occurs intermittently during heavy rain events.

269.  The Project and SWAMP  provide Defendant Bloomfield Township and Defendant Board of Road Commissioners  with justification to  invade Plaintiffs' lands  by storm water runoff and flooding and other means of occupation  that appropriates Plaintiffs' right to use and enjoy the protectable real and property interests they owned in the manner expected and are therefore sufficiently severe to constitute a  per se taking.

270.   So complete is Defendant Bloomfield Township's and Defendant Board of Road Commissioners' claim of ownership of the drain easement that they discharge public storm water into the property while claiming it is private property and now require the private property owners to maintain the drainage facilities for a public purpose , while prohibiting the Plaintiffs from removing the drainage facilities.

271. Both on its face and as applied to Plaintiff under the Project and Swamp,  Defendant Bloomfield Township's and Defendant Board of Road Commissioners' requires that Plaintiff allow the unwanted storm drain to remain on its property unless the  grants it a permit to remove Defendant Bloomfield Township's and Defendant Board of Road Commissioners the system, which is also a per se taking.

272.   Another consideration in the takings analysis is that Defendant Bloomfield Township and Defendant Board of Road Commissioners  benefit at the expense of Plaintiffs, as opposed to a mere consequential  injury.  The direct result of Defendant Bloomfield Township's and Defendant Board of Road Commissioners'  actions under SWAMP and the design, and construction of the Project to reasonably assure drainage of the Subdivision public roadways is to

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

take flowage rights from the Plaintiffs as theirs own, and thus the public purpose without paying the affected Plaintiffs, the just compensation for a taking.

273.   In the case of the Project, Defendant Bloomfield Township and Defendant Board of Road Commissioners receive a notable benefit at the expense of  Plaintiffs.  The Defendant Bloomfield Township and Defendant Board of Road Commissioners  drain storm water runoff and flood Plaintiffs' land without paying just compensation and  they seek to offload what Ciff  Seiber, P.E., estimates at $51,408.00 to  correct the flowage problem. **[See Exhibit 10   ]** onto Plaintiffs.

274.  Director Mehalski estimated that there are thousands of sites, mostly privately owned, in Defendant Bloomfield Township. Defendant Bloomfield Township's Board members expressed the importance of beginning to repair its storm water infrastructure to eliminate liability, especially as extreme weather events become more common. Director Mehalski mentioned that the laws for the sanitary sewer system are based on the knowledge of the system and its defects, emphasizing that the Defendant Bloomfield Township has a duty to act once ownership is discovered. [See Exhibit 12 and Video Clip of Board Discussion ][9]

275.  Like Plaintiffs, other similarly situated landowners, many privately own sites, which Director Mehalski estimated to be in the thousands are being used by Defendant Bloomfield Township and Defendant Board of Road Commissioners for public purposes, without the payment of  just compensation to the private land owner.

276.  On September 12, 2022, Defendant Bloomfield Township approved a contract with Pipetek Infrastructure Services to pay $249,707.75  just for the inspection of fifty stormwater sights. Under SWAMP Defendant Bloomfield Township ignored the storm water sites draining storm water from public roadways on private property. **[See Exhibit 19 ].**

---

[9] Consider Storm Water Asset Cleaning and Televising Contract Award - YouTube

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

277.  If Defendant Bloomfield Township and Defendant Board of Road Commissioners convince just 20 land owners affected like the Plaintiffs at approximately $50,000.00 to repair and maintain the storm sewers draining storm water into their lands from public roadways to repair storm water drainage facilities, Defendant Bloomfield Township and Defendant Board of Road Commissioners will  save $100,000.00.  And out of the thousands that . Director Mehalski speak of there are likely many more than 20 land owners affected like the Plaintiffs.

278. As a result of the foregoing, and in addition to, or in the alternative to, the other causes of action asserted herein, Plaintiffs have been deprived of the full and exclusive use, occupancy, and enjoyment of their property resulting in a taking of their property for a public use, without payment of just compensation. These Defendants promulgated that policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations."

279.  The Defendant Bloomfield Township and Defendant Board of Road Commissioners  are occupying the Plaintiffs' lands, as set forth in this Complaint, while declining not to recognize long-established interests in private property as a device to take private property..

280.   As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their private property.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT II
## Takings Clause of the Fifth Amendment —42 U.S.C. §1983
## (Regulatory Taking)

281.  Plaintiffs re-allege and incorporate by reference each and every allegation set forth

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

in Paragraphs 1 through 280 as though fully set forth herein.

282.   A partial or non-categorical regulatory taking prevents the property owner from some—but not all—economic uses of the land.  To determine whether a regulation amounts to a "non-categorical" regulatory taking, courts apply an "ad hoc, factual inquiry" set out by the Supreme Court in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 124-125  (1978).

283.   The *Penn Central* inquiry involves "three significant factors: (1) the economic impact of the regulation on the Plaintiffs; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.. Applying those factors here, the actions of  Defendant Bloomfield Township  and Defendant Board of Road Commissioners  amount to regulatory takings.

284.  The first Penn Central factor is the economic impact. The  economic impact of Defendant Bloomfield Township's and Defendant Board of Road Commissioners' SWAMP  on the Plaintiffs are significant.  According to Plaintiffs' expert, it will cost Plaintiffs approximately $51,408.00 to correct the flowage problem  caused by Defendant Bloomfield Township's and Defendant Board of Road Commissioners  discharging public storm water into private.

285.  Defendant Bloomfield Township and Defendant Board of Road Commissioners admit they have no legal right or jurisdiction to discharge storm water into Plaintiffs' lands.

286.   Furthermore, the Seller Disclosure Act (SDA), MCL*§* 565.951et seq., imposes a legal duty on sellers to disclose to buyers the existence of certain known conditions affecting the house. MCL*§*  565.957(1). The SDA requires a transferor to honestly disclose and to disclose in good faith information known to the transferor at the time the seller's disclosure statement is completed. See <u>*Roberts v Saffell*</u>, <u>280 Mich. App. 397, 413</u> (2008).  Disclosing this will have a negative economic impack on the sale of Plaintiffs' lands.

287.   As to Plaintiffs' reasonable investment-backed expectations, the Plaintiffs  purchased their property for the same varied reasons people generally buy real estate, e.g., for a home to live in safely and as an investment.  But as already noted in this Complaint, the degree of interference by Defendant Bloomfield Township and Defendant Board of Road Commissioners with these expectations by the Defendants  acute.  Simply put, Plaintiffs did not expect "to bear public burdens of maintaining a drain and infrastructure "which, in all fairness and justice, should be borne by the public as a whole."

288.   As to the third-prong of Penn Central's balancing test, the court considers  the character of the government action.  A fundamental purpose of the Takings Clause is "`to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Armstrong v. United States,* 364 U.S. at 49. This is not a case of   Defendant Bloomfield Township's and Defendant Board of Road Commissioners' violating the Takings Clause,  to prevent the use of  Plaintiffs' private property in such a manner which either is or could be consider to be a nuisance.

289. The Plaintiffs recognize, fairness and justice do not compel the public as a whole to bear the burden of abating any nuisance which Plaintiffs  may be permitting on their land. Here, the problem is   Defendant Bloomfield Township and Defendant Board of Road Commissioners occupying private property without paying just compensation.

290.   As already noted,  Defendant Bloomfield Township's and Defendant Board of Road Commissioners violate the Takings Clauses of the Fifth and Fourteenth Amendment of the United States Constitution in another manifestation of  the government declining to recognize long-established interests in private property as a device to take them.  See *Hall v. Meisner*, No. 21-1700, at *1 (6th Cir. Oct. 13, 2022).

291.   Defendant Bloomfield Township's and Defendant Board of Road Commissioners by *ipse dixit*, may not transform private property into public property without compensation simply by legislatively abrogating the traditional rules governing private property in Michigan. See *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 167 (1998).

292.   As a result of the foregoing, and in addition to, or in the alternative to, the other causes of action asserted herein, Plaintiffs have been deprived of the full and exclusive use, occupancy, and enjoyment of their property resulting in a taking of their property for a public use, without payment of just compensation. These Defendants promulgated that policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations."

293.   As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their private property.

   **WHEREFORE**, Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT III
## Takings Clause of the Fifth Amendment —42 U.S.C. §1983
## ( Individual Liability)

294.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 293 as though fully set forth herein.

295.  Defendant Managing Director Kolar,  Defendant Director Olsztry-Budry,  Defendant Deputy Managing Piotrowicz and Defendant Supervisor Saporsky did work on the Project, observed or had reason to know that constitutional harm would taking place when they played a part in and did participate in the approval, design and construction of the Project that was designed

to improve drainage of the Subdivision's public roadways by discharging storm water and flood water into private lands, which Defendants knew to be private property, where Defendant Bloomfield Township and Defendant Board of Road Commissioners could not occupy the land without paying just compensation.

296. Defendant Township Supervisor Walsh is aware at relevant times that Defendant Bloomfield Township and Defendant Board of Road Commissioners are occupying private property without paying just compensation and Plaintiffs' private land were being flooded.

297. . Defendant Managing Director Kolar, Defendant Director Olsztry-Budry, Defendant Deputy Managing Piotrowicz, Defendant Township Supervisor Walsh and Defendant Supervisor Saporsky had both the opportunity and the means to prevent the constitutional harm from occurring before this Complaint was filed.

298. Defendant Managing Director Kolar, Defendant Director Olsztry-Budry, Defendant Deputy Managing Piotrowicz,, Defendant Township Supervisor Walsh and Defendant Supervisor Saporsky conduct demonstrates deliberate indifference to the private property rights of the owners of lots 6 and 7, which belonged to the Plaintiffs.

299. These Defendant are liable in their individual capacities under § 1983 when they violate constitutional rights that are clearly established. These Defendants promulgated a policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations.

300. These Defendants have a realistic opportunity to intervene, prevent harm or stop SWAMP; however they continue with unconstitutional actions.

301. As a result of the foregoing, and in addition to, or in the alternative to, the other causes of action asserted herein, Plaintiffs have been deprived of the full and exclusive use, occupancy, and enjoyment of their property resulting in a taking of their property for a public use, without payment of just compensation.

302.  As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their private property.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT IV
### Procedural Due Process—*42 U.S.C. §1983*

303.  Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 302 as though fully set forth herein.

304.  Plaintiffs have stated in this Complaint that  violations of  private property  rights secured by the federal Constitution or laws and showed that the deprivation was committed by Defendants acting under color of state law.  The private property rights stated in this Complaint were abrogated, infringed, denied, and invaded and continues to be abrogated, infringed, denied, and invaded  by Defendants herein, without right to notice and a hearing.

305.   It is the general rule that due process "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch* , 494 U.S. 113, 127,  (1990).

306. Defendant Bloomfield Township and Defendant Board of Road Commissioners are declining not to recognize long-established interests in property as a device to take them—the arbitrary and capricious invasion of private property —that itself violates due process rights.

307.   Defendant Bloomfield Township' and Defendant Board of Road Commissioners' authority is conclusory and *ipse dixit* assertions causing a loss for which available state remedies would not adequately compensate the Plaintiffs.

308.   The Defendants have deprived the Plaintiffs of their vested interest in the use and possession of  property interest protected by due process and did not afford them adequate

procedural rights prior to depriving them of the property interest. These Defendants promulgated that policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations.

309.   As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their property.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT V
## Substantive Due Process—42 U.S.C. §1983

310.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 309 as though fully set forth herein.

311. Substantive Due Process protects people from certain governmental deprivations " 'regardless of the adequacy of the procedures employed.' " *Range v. Douglas* , 763 F.3d 573, 588 (6th Cir. 2014).

312.   Substantive due process protects individuals from arbitrary actions of the government. See *City of Sacramento v. Lewis* , 523 U.S. 833, 845-46 (1998).

313.   Regulations cannot stand if they are  "arbitrary, capricious, or manifestly contrary to the statute." *Wallace v. Fedex Corp.*, 764 F.3d 571, 589 (6th Cir. 2014). Requiring the Plaintiffs to maintain drainage from the public street is clearly manifestly contrary to the statute.

314.   Defendant Board of Road Commissioners has a statutory duty to keep the roads under its jurisdiction "in reasonable repair, so that they shall be reasonably safe and convenient for public

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

travel." *MCL § 224.21*.   The Sixth Circuit in  *City of Detroit v. State of Mich*, 803 F.2d 1411, 1420 (6th Cir. 1986) stated that "[o]ne aspect of this duty would presumably include a requirement that…..[Defendant Board of Road Commissioners] provide adequate and appropriate drainage for roads under its jurisdiction."   This duty belongs to Defendant Board of Road Commissioners not Plaintiffs.

315. Under  *MCL § 42.10* ,  Supervisor Walsh's  functions and duties  includes the construction, repair, maintenance of sewers, not Plaintiffs.

316. Here the  Defendants rely on non-existent or irrelevant rules, such as SWAMP to reach the adverse decisions regarding their discharge of storm water runoff into Plaintiffs' lands and their failure to maintain the drainage infrastructure.

317.   "Where government officials rely on non-existent or irrelevant rules to reach an adverse decision, the governmental action can be said to be arbitrary for the purpose of a due process claim. " *Lawrence v. Pelton*, 413 F. Supp. 3d 701, 714 (W.D. Mich. 2019).

318.  As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their property.

**WHEREFORE**, Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT VI
## Equal Protection—42 U.S.C. §1983

319.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 318 as though fully set forth herein.

320.   Plaintiffs' rights under the Equal Protection Clause, which requires that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4. [t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918).

321. Proceeding under a "class-of-one" theory, Plaintiffs claim that the Defendant Bloomfield Township and Defendant Board of Road Commissioners violated the Fourteenth Amendment's Equal Protection Clause by discharging public storm water into their land and requiring them to maintain the drainage system.

322. Plaintiffs, as land owners are intentionally being treated differently from others similarly situated in the SAD, i.e., the other lot owns in the thirty seven (37) lots Subdivisions, who are not required to pay to maintain the Subdivision's public storm water drain system and (2) that "there is no rational basis for the difference in treatment.

323.   Plaintiffs with land encumbered by drain easements and infrastructure for the sole purpose of draining public storm water from public roadways. Defendant Bloomfield Township and Defendant Board of Road Commissioners  are forcing Plaintiffs' alone to bear public burdens which, in all fairness and justice, should be borne by subdivision's landowners as a whole. Quite apart from the fact that Defendants actions are unconstitutional, both facially and as applied to Plaintiffs,   Defendants demand of Plaintiffs are "irrational and wholly arbitrary." *Village of Willowbrook v. Olech,* 528 U.S. 562, 565 (2000).

324. There is no conceivable basis or any rational bases that support Defendant Bloomfield Township and Defendant Board of Road Commissioners imposing flooding and storm water runoff on private lands without benefit of a public flowage easement or other legal rights and/or requiring a private individual to maintain and repair facilities draining public storm water from a public roadway, which in all fairness and justice, should be borne by the public as a whole.

325. Defendants avoidance of equal protection of law is being done in a willful, deliberate, or reckless manner in disregard of Plaintiffs clearly established property rights to burden Plaintiffs with expenses that would normally be the burden of Defendants. These Defendants promulgated that policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations.

326. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their property.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT VII
## Civil Conspiracy—42 U.S.C. §1983

327. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 326 as though fully set forth herein.

328. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007).

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

329.    A "single plan" existed, and Defendants shared in the general conspiratorial objective to deprive Plaintiffs of their constitutional rights, and committed overt act in furtherance of the conspiracy that caused injury" to Plaintiffs as is set forth in this Complaint.

330.    An "[e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir.1985).

331.  Defendant Bloomfield Township and Defendant Board of Road Commissioners and the Defendants performing the work under the authority of the Agreement and SWAMP.

332.  The Defendants engages in a plan to violate the Plaintiffs' and other similarly situated land owners constitutional rights by discharging storm water and having public storm water drain infrastructure on private property without the payment of just compensation.

333.  And to this end, Defendant Bloomfield Township promulgated that policy or, at a minimum, adopted "a custom of tolerance or acquiescence of federal rights violations. Under SWAMP, Defendants developed a history and rationale for their operating concept of imposing storm water runoff on private lands without benefit of just compensation or other legal rights.

334.    At all times herein mentioned herein, Defendants, were aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants and were at all times operating and acting within the purpose and scope of said conspiracy, and/or joint venture to imposing storm water runoff on private lands without benefit of just compensation or other legal rights, and each Defendant has ratified and approved the acts of the others.

335. As a result of the foregoing, and in addition to, or in the alternative to, the other causes of action asserted herein, Plaintiffs have been deprived of the full and exclusive use, occupancy,

and enjoyment of their property resulting in a taking of their property for a public use, without payment of just compensation.

336.  As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their private property.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT VIII
## MICHIGAN TAKINGS CLAUSE
### (Article X, § 2, Michigan Constitution of 1963)

337. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 336 as though fully set forth herein.

338.    The    Michigan    Constitution    provides    that private    property shall note taken for public use without just compensation. Const 1963, Article 10, § 2. When private property is either taken or damaged for public purposes, this constitutional provision serves as a guarantee to the Plaintiffs that they shall have just compensation for the taking or damage.

339. Defendant Bloomfield Township's and Defendant Board of Road Commissioners' actions  were a substantial cause of the decline of the Plaintiffs' land  value and  Defendant Bloomfield Township's and Defendant Board of Road abused their powers and took affirmative actions directed at  plaintiffs' property.

340.  As set forth in this Complaint, the Defendants committed an affirmative act directed at Plaintiffs' lands when that knew that using discharging storm water runoff into their private

property could result in harm to the private property. *Mays v. Governor*, 506 Mich. 157, 174 (2020).

341. As a result of the foregoing, and in addition to, or in the alternative to, the other causes of action asserted herein, Plaintiffs have been deprived of the full and exclusive use, occupancy, and enjoyment of their property resulting in a taking of their property for a public use, without payment of just compensation.

342. There a causal connection between Defendant Bloomfield Township's and Defendant Board of Road Commissioners' actions and the damages. Defendant Bloomfield Township's and Defendant Board of Road Commissioners' actions directed at Plaintiffs' land has the effect of limiting Plaintiffs' use of their land.

343. As a direct and proximate result of Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a preliminary and permanent injunction enjoining the Defendants from taking any additional action to deprive Plaintiffs of their private property.

**WHEREFORE**, Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## COUNT IX
## TRESPASS

344. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 343 as though fully set forth herein.

345. Defendant Bloomfield Township's and Defendant Board of Road Commissioners' appropriate governmental agencies under *MCL § 691.1416* to *MCL § 691.1419* (the "Sewage Act")..

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE, COMPENSATORY AND PUNITIVE RELIEF**

346. The Sewer Act sets forth an exceptions to governmental tort immunity for damages caused by  "appropriate governmental agencies who "owned or operated, or directly or indirectly discharged into the portion of the sewage disposal system that is causing damage…"*MCL § 691.1416(k).*

347. Under the Sewer Act, the Plaintiffs have a right of action to recover damages against the Defendant Bloomfield Township's and Defendant Board of Road Commissioners' for flooding their lands in question.

348.  Notwithstanding the Sewer Act, the Plaintiffs are entitled to  the occupation and enjoyment of their premises and their use and occupation without the trespass of Defendant Bloomfield Township's and Defendant Board of Road Commissioners.  See *Sweeney v. Road Com'rs*, 293 Mich.  at  631.

349.  Plaintiffs are in lawful possession of the lands upon is being damaged by flood water.

350.  The Defendant Bloomfield Township and Defendant Board of Road Commissioners have intentionally caused storm water to enter the lands of the Plaintiffs in a manner which Plaintiffs have not licensed or authorized.

351.    Defendant Bloomfield Township and Defendant Board of Road Commissioners do not have jurisdiction or a legal right to discharge storm water runoff from the public roadways into Plaintiffs' lands.

352.   By unlawfully Defendant Bloomfield Township and Defendant Board of Road Commissioners trespassed and encroached upon Plaintiff's lands, and wrongfully interfered with and disturbed the rightful possession, use and enjoyment of Plaintiffs' land by Plaintiffs.

353. Plaintiffs are entitled to damages for Defendant Bloomfield Township and Defendant Board of Road Commissioners trespass and unlawful encroachment upon Plaintiff's land, and for

defendants' wrongful interference with Plaintiffs' right to use and enjoy these lands because water is a physical, tangible object.

354.  The Defendant Bloomfield Township and Defendant Board of Road Commissioners are and have been aware that that discharge of the Storm water is damaging the lands of Plaintiffs.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

# COUNT X
# UNJUST ENRICHMENT

355.  Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 350 as though fully set forth herein.

356.  Unjust enrichment is an equitable doctrine. *Morris Pumps,* 273 Mich.App. at 193, . It is the equitable counterpart of a legal claim for breach of contract. See *Keywell & Rosenfeld v. Bithell*, 254 Mich.App. 300, 328, (2002).

357.  "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *McCreary v. Shields,* 333 Mich. 290, 294, (1952). "[I]n order to sustain a claim of ... unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."

358.  Defendant Bloomfield Township and Defendant Board of Road Commissioners are taking more property interest from Plaintiffs than they is entitled, completely depriving the Plaintiffs of legitimate constitutionally protected property interest, without just compensation.

359.  Defendant Bloomfield Township and Defendant Board of Road Commissioners have knowledge of the benefits conferred upon them by their actions against Plaintiffs.

360. Defendant Bloomfield Township and Defendant Board of Road Commissioners voluntarily accepted and retained the benefits conferred upon them.

361. Under the circumstances, it would be inequitable for Defendant Bloomfield Township and Defendant Board of Road Commissioners to retain the benefit conferred upon them by Plaintiffs.

362. Federal courts are authorized to enter declaratory judgments and orders of restitution, as appropriate, as a direct remedy under Section 1983. See *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 751 (1999); See also *Yannotti v. City of Ann Arbor,* No. 19-11189, at *7-8 (E.D. Mich. Oct. 28, 2019). **[See Exhibit 36]**

363. Defendant Bloomfield Township and Defendant Board of Road Commissioners have been unjustly enriched and are required to pay for the use of the benefits they received from the use of Plaintiffs' lands.

**WHEREFORE,** Plaintiffs request the applicable relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and provide the following relief:

A.  Declare that Defendant Board of Road Commissioners and Defendant Bloomfield Township policies or customs as set forth in the Complaint are unconstitutional, both facially and as applied to Plaintiffs;

B.  Declare that Defendant Board of Road Commissioners and Defendant Bloomfield Township actions, including any requirements for maintenance and repair of the storm water facilities that they are using to drain storm water from the Subdivision's public roadways as unconstitutional;

C.  Declare a preliminary and a permanent injunction prohibiting Defendant Board of Road Commissioners and Defendant Bloomfield Township from enforcing against the Plaintiffs the unconstitutional policies or customs as set forth in the Complaint;

D.  Declare that the Plaintiffs be reimbursement for all monies saved by Defendant Board of Road Commissioners and Defendant Bloomfield Township through unjust enrichment by their actions;

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**

E.  Declare that Defendant Board of Road Commissioners  and Defendant Bloomfield Township can not take a flowage easement in the private property of the Plaintiffs without paying just compensation;

F.  Declare a judgment for compensatory damages against Defendant Board of Road Commissioners  and Defendant Bloomfield Township  in an amount as the Court deems fair and equitable;

G.  Declare a judgement for punitive damages against Defendants sued individually in an amount the Court deems fair and equitable;

H.  Declare reasonable and necessary attorney fees incurred by Plaintiffs in connection with this action, together with costs of Court. pursuant to 42 U.S.C. § 1988, and any other statute or law as may be applicable; and,

I.  Declare  all and any other relief, at law or equity, which the Plaintiffs have shown themselves entitled in the opinion of the Court or otherwise deemed fair, just and equitable.

## JURY TRIAL DEMAND

**WHEREFORE,**  a jury trial is demanded on behalf of Plaintiffs, and all persons

Respectfully submitted,

/s/ Renette Jackson
Dated: February 1, 2023                     Renette Jackson  P69002
26677 West 12 Mile Road
Southfield, Michigan 48034
248-910-5415-Direct Cell
AJATLAW@GMAIL.COM

**PLAINTIFFS' COMPLAINT FOR DECLARATORY,  INJUNCTIVE,
COMPENSATORY AND PUNITIVE RELIEF**